(57 App. Div. 331.)

PRESIDENT, ETC., OF GREAT WESTERN TURNPIKE CO. v. SHAFER.

(Supreme Court, Appellate Division, Third Department. January 9, 1901.)

1. TURNPIKES—EXEMPTION FROM TOLLS.

> Gen. Laws, c. 40, § 130, declaring that no tolls shall be charged or collected at any gate from any person living within one-half mile from the gate, does not apply to a corporation created by special charter.

2. CORPORATION AGENT'S AUTHORITY.

> Where one professing authority contracted with B., on behalf of a corporation, that upon his closing a certain road the occupants of B.'s farm should be forever free from paying tolls at the company's gate near such farm, and the road was closed, the authority to make the contract could not be questioned after the corporation had observed its terms for years.

3. STATUTE OF FRAUDS.

> An oral agreement that on closing a road the occupants of a certain farm should be free from tolls at a particular gate was not within the statute of frauds, as granting an interest in lands, since exemption from tolls is not a right of way, but merely an exemption from a tax upon its use.

4. SAME.

> An oral agreement that on closing a road the occupants of a certain farm should be forever free from paying tolls at a particular gate was not against the statute of frauds, as an agreement not to be performed within a year, since time was not involved, but the power to tax their use of the road was sold outright.

> Parker, P. J., and Smith, J., dissenting.

Appeal from Albany county court.

Action by the president, directors, and first company of the Great Western Turnpike Company against Martin L. Shafer. From a judgment of the Albany county court affirming a judgment of the Albany city court in favor of defendant, plaintiff appeals. Affirmed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

Tracey, Cooper & Rathbone (Albert Rathbone and Frederick Townsend, of counsel), for appellants.

Countryman, Du Bois & Bevans (P. E. Du Bois, of counsel), for respondent.

KELLOGG, J. This action was brought to collect tolls for passage through the plaintiff's tollgate, situated at the easterly end of its present turnpike, and near the Albany city limits. The defendant admits to have passed in 1895 with teams hauling ice from the so-called Buell farm, occupied by him, and that he paid no tolls. The Buell farm is near the tollgate, the dwelling house thereon being within 100 feet of the gate, and the gate stands between it and the city. The ice was gathered from a pond on this farm, and was stored in a house thereon, and within 400 feet of the gate. The defendant claims that in 1853 an oral agreement was made between William P. Buell, owner of a life interest in the farm, and the plaintiff, whereby Buell was to close up a private road which gave convenient access to him and others to the city of Albany without passing along the toll road, and as a consideration he and the tenants of the Buell farm should for all time be exempt from the burden

of toll; that he closed the road, and has always since kept it closed, and has, up to a short time before the bringing this action in 1895,— 40 years and more,—passed the tollgate without payment of any toll, and up to that date the plaintiff has strictly observed the terms of its agreement, and thereby ratified and confirmed it, and should now be held to it. The defendant also invokes the provision of the transportation corporation law (section 130 of chapter 40 of the General Laws) which enacts that no tolls shall be charged or collected at any gate from any person living within one-half mile of the gate. This last defense is not available to the defendant here, for the reason that this law does not apply to any corporation other than those incorporated under the general act. It was so held in Road Co. v. Schrot, 90 Hun, 56, 35 N. Y. Supp. 602. The plaintiff was incorporated in 1799 by special charter, and the rights by that charter conferred cannot be taken away by any subsequent act of the legislature, though the intent to do so were manifest. Nor could its property rights, such as the right to collect toll from all persons, wherever residing, and who traveled by the tollgate upon its road, and which right was conferred by the charter of 1799, be taken away by the state through any constitutional enactment. The state could take away such right only upon full compensation. The charter of 1799 does not appear to have given to plaintiff the right to establish a tollgate where the one in question now is, nor did it give plaintiff the right to exact the tolls in the amount now taken, nor did it give the right to establish a plank road. All these rights were conferred after the constitution of 1846, and over all rights acquired since the constitution of 1846, which reserved in the legislature the right to alter, take away, or annul rights subsequently conferred, without doubt the legislature has power, but so far it does not appear to have exercised it. The first defense, therefore, must be defendant's sole reliance. It appears from the evidence that some one in the employ of plaintiff, in about 1853, professing to be authorized so to do, did agree with Buell, the occupant of the Buell farm, and having therein a life interest, that, if he would close up a road which diminished the travel over plaintiff's turnpike, the Buell farm and its occupants should be forever relieved of tolls at the gate near the Buell farm. It also appears that Buell, acting upon that promise, did close the road, and it never was thereafter used. It also appears that at no time since—over 40 years—has the plaintiff demanded tolls at this gate of Buell, or from any tenant or occupant of the Buell farm. It is well-recognized law that if a person assumes to act as the agent of a corporation, and the corporation afterwards adopts his acts, that is sufficient proof of authority. It is wholly inconsistent that after 40 years' recognition of this agreement the plaintiff should now raise any question as to the authority of the person making the agreement.

We may safely conclude that the agreement was made and was well supported by ample consideration, and by its terms the defendant had the right to haul the ice in 1895 free of tolls. The only remaining question is as to the legal force of the agreement. In other words, was it valid at law? Except for the statute of frauds,

I think there would be no room for argument. It is an oral agreement. Is it an agreement not to be performed within one year? Is it a grant of an interest in lands,—an easement? The pleadings seem to have also been oral. Whether the statute of frauds was pleaded so as to be available to plaintiff does not appear. The subject-matter does not seem to me to be of the nature of an easement or any interest in land. Buell was not negotiating for any right of way. The right to pass and repass was already secured to him by the law. A burden was attached to that right, not in itself in any way a limitation on the right, nor was the burden in the nature of realty. The franchise of the plaintiff empowered it to exact money; to fix a tax upon the enjoyment of the right of way,—the right to impose an obstruction to the freedom of the use which the law conferred. I cannot understand that this was in its nature such an interest as the statute of frauds contemplates when it requires that dealings in respect to it must, to be valid, be evidenced by a writing. If one were to pay a return toll, could he not return without payment of another toll unless he had the agreement to return free of toll in writing? What Buell actually did was to pay his toll for all time in advance. He extinguished a burden thereby, and plaintiff had no right afterwards to impose it. The tolls had been paid. That is the sole reason that tolls were not collectible. The amount paid, it was agreed, should be, and was, sufficient to cover all future tolls which otherwise might have been exacted from Buell and the occupants of his farm. I do not think plaintiff can repudiate the agreement now because there is no writing to prove it. As to the other claim, that it was an agreement not to be performed within a year, and therefore void, there seems to me to be very little to sustain it, and what argument there may be is specious. It was not an agreement to do anything. If plaintiff had agreed to carry the plaintiff for a number of years, or had agreed to do any continuous labor for years, or to maintain its turnpike for years, a ground for argument would be apparent. No time here is fixed. The plaintiff might abolish its gate within a year, but time was not involved. The agreement at once and forever eliminated a burden. It made an end of it then. There was no future for it,—no year or succession of years. The plaintiff sold its power to vex the occupants of the farm, and that was all there was of it.

I do not find that there are any exceptions taken on the trial which require a reversal, nor was there serious error committed in the admission or exclusion of testimony. I think the judgment should be affirmed, with costs. All concur, except PARKER, P. J., and SMITH, J., dissenting.