[No. 4545.  Decided September 28, 1903.]

*In the Matter of the Estate of* NANNIE D. FIELD,
*Deceased.*

O. C. MOORE, *as Administrator, Appellant,* v. C. P.
COEY, *Respondent.*[1]

APPEAL—REVIEW—HARMLESS ERROR. Error in the admission
of evidence is harmless where there is a trial *de novo* on appeal.

ADMINISTRATORS—CONTRACT TO ACT NOMINALLY—VALIDITY—
WAIVER OF FEES. Where a surviving husband acquires all the
interests of other heirs in the communtiy realty, and there are
no debts, he may employ a person to act as administrator in a
formal manner for the purpose of clearing the title, under an
agreement waiving the statutory fees allowed administrators, and
without surrendering possession or giving up the management of
the estate.

SAME—STATUTE OF FRAUDS—PERFORMANCE WITHIN ONE YEAR.
Such an agreement, not in writing, is not void as against the
statute of frauds because not to be performed within one year,
since it was but a waiver of rights, calling for no specific thing
to be done.

SAME. Moreover the necessity of such duration, not the ex-
pected duration, is the test, and does not bring such contract
within the statute.

SAME—PART PERFORMANCE—ESTOPPEL. After part performance
of such a contract, by accepting the office, the administrator will
be estopped from alleging its invalidity.

Appeal by O. C. Moore, administrator of the estate of
Nannie D. Field, deceased, from an order of the superior
court for Spokane county, Belt, J., entered June 14,
1902, denying his petition for an accounting, after a hear-
ing upon the merits. Affirmed.

*Happy & Hindman* and *Cullen & Dudley,* for appellant.
An oral contract which cannot be performed within one
year is within the statute of frauds, and "void." *Cum-*

[1]Reported in 73 Pac. 768.

*mings v. Stone,* 13 Mich. 70; *Frary v. Sterling,* 99 Mass. 461; *Carney v. Mosher,* 97 Mich. 554, 56 N. W. 935; *Reynolds v. First Nat. Bank,* 62 Neb. 747, 87 N. W. 912; *Warner v. Texas & P. R. Co.,* 54 Fed. 922; *Packet Co. v. Sickles,* 5 Wall. 580; *Van Dyke v. Clark,* 19 N. Y. Supp. 650; *Groves v. Cook,* 88 Ind. 169, 45 Am. Rep. 462; *Summerall v. Thoms,* 3 Fla. 298; *Foote v. Emerson,* 10 Vt. 338; 33 Am. Dec. 205; *Jackson Iron Co. v. Negaunee Concentrating Co.,* 65 Fed. 298; *Broadwell v. Getman,* 2 Denio, 87; *Kansas City etc., R. Co. v. Conlee,* 43 Neb. 121, 61 N. W. 111; *Baker v. Codding,* 18 N. Y. Supp. 159; *White v. Levy,* 93 Ala. 484, 9 South. 164; *White v. Holland* (Ore.), 3 Pac. 573; *Swift v. Swift,* 46 Cal. 266; *Hearne v. Chadbourne,* 65 Me. 302; *Sharp v. Rhiel,* 55 Mo. 97. The contract required the administrator to violate the law and was void as against public policy. *Cox v. Grubb,* 47 Kan. 435, 28 Pac. 157, 27 Am. St. 303; *Forsyth v. Woods,* 11 Wall. 484; *Deobold v. Opperman,* 111 N. Y. 531, 19 N. E. 94, 7 Am. St. 760, 2 L. R. A. 644; *Moss v. Cohen,* 32 N. Y. Supp. 1078; *Specht v. Collins,* 81 Tex. 213, 16 S. W. 934; *Zimmerman v. Kinkle,* 108 N. Y. 282, 15 N. E. 407; *Foote v. Emerson,* 10 Vt. 338, 33 Am. Dec. 205; *Myers v. Hodges,* 2 Watts 381, 27 Am. Dec. 319; *Cunningham v. Cunningham,* 18 B. Mon. 19, 68 Am. Dec. 718; *Wilson v. Lineberger,* 94 N. C. 641, 55 Am. Rep. 628; *Brown v. First Nat. Bank,* 137 Ind. 655, 37 N. E. 158, 24 L. R. A. 206; *Drexler v. Tyrrell,* 15 Nev. 114; *Atcheson v. Mallon,* 43 N. Y. 147, 3 Am. Rep. 678; *West v. Camden,* 135 U. S. 507, 10 Sup. Ct. 838; *Brooks v. Cooper,* 50 N. J. Eq. 761, 26 Atl. 978, 35 Am. St. 793, 21 L. R. A. 617; *Baskett v. Moss,* 115 N. C. 448, 44 Am. St. 463, 48 L. R. A. 842.

*Graves & Graves,* for respondent.    The contract was
not within the statute of frauds as it was not a contract
to do anything.    *President etc. Turnpike Co. v. Shafer,*
68 N. Y. Supp. 5.    The question is not what is the prob-
able duration of the contract, but whether it is required
that it should not be performed within the year.    *Warner
v. Texas & P. R. Co.,* 164 U. S. 418. If the contract is void,
the courts will extend aid to neither party.    *St. Louis,
V. etc. Co. v. Terra Haute R. Co.,* 145 U. S. 393, 12
Sup. Ct. 953 ; *Pullman's Palace Car Co. v. Central Transp.
Co.* 171 U. S. 138, 18 Sup. Ct. 808.

DUNBAR, J.—This is an appeal from an order of the
court denying the petition of the administrator to require
respondent to give an accounting of all the moneys, goods,
chattels, accounts, and papers belonging to the estate of
deceased, which had come into respondent's possession,
it is alleged, in trust for the petitioner, and of respond-
ent's proceedings thereon, and that the respondent be
compelled to deliver the same to the petitioner.

Prior to February 23, 1896, Marshall Field and Nannie
D. Field were husband and wife, and were citizens and
residents of the state of Illinois.    During the existence
of this community they had acquired as community prop-
erty several thousand acres of land in Spokane and Whit-
man counties in this state.    A portion of this land had
been sold under time contracts, the payments upon which
had not been completed, and which were subject to the
equities of the purchasers and to their right to convey-
ances when they had fully paid therefor.    The unsold lands
were farming lands which were occupied and farmed by
tenants under leases which required the rents to be paid
in cash or produce.    February 23, 1896, Nannie D. Field
died intestate, leaving as her heirs her husband, Marshall

Field, and two children. Thereafter, and prior to the commencement of the probate proceedings herein, Marshall Field acquired the interest of the children in the Washington lands, and became the sole heir to the property of the estate. The respondent, Coey, had been Mr. Field's agent for attending to his farming business for several years, and was continued in charge thereof the same as before Mrs. Field's death.

In order to avoid any question as to the legality of Field's title, Mr. Belden, a Spokane lawyer, was instructed to institute administration proceedings for the purpose of clearing the record title, by procuring an adjudication that the estate was not indebted, and that Mr. Field was the only person having an interest in the property. The appellant, who was then a clerk in Mr. Belden's office, was, upon the recommendation of Mr. Belden, nominated by Mr. Field to be administrator of said estate, and he was appointed to that position. Prior to the appointment, Mr. Field stipulated with the appellant that the administration proceedings should not interfere with respondent's management of the property nominally affected by it, but that his appointment should be a merely formal matter.

It had been the duty of Mr. Coey, under his agency, to collect the rentals and purchase-payments, etc., and to make his returns directly to Mr. Field. This mode of conducting the business of the estate was carried on for some months until after Mr. Moore had left the employment of Mr. Belden, when Mr. Moore, through his attorneys, requested Mr. Coey to make return to him of his management of the estate, which Mr. Coey refused to do, but continued to make returns to Mr. Field, as theretofore, refusing to turn over to the administrator the moneys received by him from the proceeds of the property belonging to the estate. Thereupon Moore petitioned the court to compel Coey to account to

him.   The petition was filed on March 14, and citation
was issued and served upon Mr. Coey.

On March 19 a petition on behalf of Marshall Field was
also filed, praying for the removal of Mr. Moore as ad-
ministrator; this petition alleging the acquisition by Mr.
Field of the entire interest in the estate, the experience
of Mr. Coey as the managing agent of the lands for Mr.
Field, the inexperience of Mr. Moore in such matters;
and, further, that Moore was nominated as administrator
because of an agreement between him and Mr. Belden,
acting as Mr. Field's agent, that Mr. Moore should con-
duct the purely formal affairs of the administration un-
der the advice and direction of Mr. Belden, and not
otherwise; that he was to be governed entirely by the ad-
vice and direction of Belden, and that the business was
to be done through him only nominally, and that all of
the business of said lands should be conducted by Coey
as theretofore, and all remittances made directly to Mr.
Field; that Moore was not, by said agreement, to be
required to exercise any care or control over the prop-
erty, and that everything was to be left to the judgment
of the petitioner and his representative, Coey; that, for
his nominal performance of the duties of administration,
Moore was to receive as full compensation $250, which
should be in lieu of all fees which he would otherwise
be entitled to claim under the statutes.   The petition
further alleged that Mr. Field had given to Moore a bond
in the sum of $20,000 to indemnify him and save him
harmless from all demands arising out of the business
being conducted in the manner specified in the agreement;
that Moore entered upon the discharge of his duties un-
der such agreement, and conformed to the conditions of
the agreement until after he had left the employment of
Belden, when he proceeded to employ other counsel, and

attempted to charge the estate with the payment of their fees.

Many other things are set up in the petition, but those we have mentioned are sufficient for the purposes of the case. On the filing of this petition a citation was issued, directed to Mr. Moore, requiring him to appear and show cause why he should not be removed as prayed. On the return day of this citation the court ordered that the hearing upon this petition and the hearing upon the petition to compel an accounting of Mr. Coey be heard together as one matter. A demurrer to the petition of Mr. Field was interposed and overruled. The administrator thereupon filed his answer, denying the making of any contract alleged with reference either to the management of the estate or his fees, and all charges of wrongful conduct upon his part. The respondent, Coey, served and filed his answer, which set forth substantially the facts that we have mentioned. Findings of fact and conclusions of law were proposed by the appellant, which were refused by the court.

The court found, in substance, the following facts: That Mr. Field was not informed of the community property laws of the state of Washington, and did not know of the necessity for administration to settle his deceased wife's interest in the property, until in the spring of 1901, when, through his Chicago lawyers, Mr. Belden, a Spokane lawyer, was instructed to take all necessary steps to make good title to the farming lands in this state; that the administration was intended to be purely formal for the purpose of making title; that there were no debts, and that all interest in the realty had previously been conveyed to Mr. Field; that at the time the administrator, Mr. Moore, was appointed, he was a clerk in the

employ of Mr. Belden; that the fact that there were no
debts, and that Mr. Field had the entire interest in the
property, and that the administration was to be purely
formal, was understood by all the parties; that Mr. Coey
had been for several years attending to the business of Mr.
Field, collecting rents and payments, marketing grain,
etc., and remitting to Mr. Field, for which he was paid
a commission on an agreed scale; that the farming inter-
ests in Mr. Coey's hands were large and complicated, and
required a great deal of labor and oversight on the part
of Mr. Coey, and special knowledge of the conditions and
of the business of farming in Eastern Washington; that
these facts were understood by Mr. Belden and his clerk,
Mr. Moore; that it was desired that Mr. Coey should con-
tinue the business as theretofore; that, after the considera-
tion of certain other legal questions, it was determined to
appoint Mr. Moore administrator, it being understood by
all the parties that his work would be purely formal, and
accepted by him with that understanding, and that it was
agreed that he would waive the statutory fees of adminis-
tration in consideration of that fact.   The court could
not find that he agreed to accept $250, but did find that
he waived the statutory fees, and could receive only such
sum as was reasonable for the services actually rendered;
that the whole matter was placed in the hands of Mr.
Belden, and that the appointment of Mr. Moore was
made so that the formal business of administration might
be more conveniently done in his office; that it was agreed
that, in view of the fact that there would be a departure
from the formal course of administration by reason of
Mr. Coey's remitting directly to Mr. Field, Mr. Field
should give an undertaking to Mr. Moore to hold him
harmless; that this undertaking was subsequently exe-

cuted, sent to Mr. Belden, accepted by Mr. Moore, and
its contents known and approved by him; that thereafter
Mr. Moore paid no attention whatever to the business of
the estate, but it was entirely conducted by Mr. Coey
without any oversight on the part of Mr. Moore or any
direction from him, no services except the mere lending
of his name having been performed by Mr. Moore; that
in February Mr. Moore left the employment of Mr. Bel-
den, and shortly thereafter began to insist that he should
make his semi-annual report to the court; that Mr. Coey
brought the vouchers and figures necessary for that pur-
pose to Mr. Belden's office, Mr. Moore being present,
and left them with the understanding that Mr. Belden
would prepare a report; that the next day, for some rea-
son not apparent in the evidence, Mr. Moore employed
other counsel, and demanded these papers and vouchers
from Mr. Belden; that it was the purpose of all the par-
ties that the business should be conducted by Mr. Coey,
and that Mr. Moore should not handle any of the mon-
eys or any of the grain, or manage the farming affairs;
that he was appointed with that express understanding;
that he would not have been appointed but for that under-
standing; neither was it intended that Mr. Coey should
be his agent in any other than a formal sense, nor did
Mr. Coey ever become his agent, or employee, but, on
the contrary, continued as agent of Mr. Field, and no
contention to the contrary of this was ever made by Mr.
Moore until after he left Mr. Belden's employ, when the
controversy between the parties arose; that the penalty
of Moore's bond was less by a number of thousand dollars
than the annual rentals and collections from the realty.

The conclusions of law were that Moore was entitled to
charge only such fees as the services theretofore actu-

ally rendered were reasonably worth, and that his waiver
of the statutory fees was enforcible and valid; that there
was no necessity for the employment of additional counsel,
and that compensation ought not to be allowed them out
of the funds of the estate; that the contract in respect
to the handling of the business was valid, there appearing
no other personal interest in it except Mr. Field's, and
that it should be enforced; that the citations issued against
Mr. Coey should, therefore, be discharged.    The court
refused, however, to discharge Mr. Moore, but required
him to conduct the business in accordance with the con-
tract under which he was appointed.    In pursuance of
these findings it was ordered that the citation against
Moore be discharged and the petition to remove Mr. Moore
be dismissed, and that he be directed to continue the ad-
ministration of the estate in accordance with law and the
facts found by the court.    From so much of this order
as discharged the citation directed to Mr. Coey, and re-
quired the administrator to administer the estate in ac-
cordance with the alleged contract, by which he was to be
administrator in name only, the administrator appeals.

Those assignments of error which relate to the improper
admission of evidence we will not discuss, for, it being
the duty of this court to try the case, in its consideration
the court will pass upon such testimony only as it deems
admissible under the law.    We have examined the record,
and from such examination are not disposed to disturb
the court's findings of fact.    So that the only question
for consideration is whether such findings justify the
conclusions of law.    We think under the testimony, that
Mr. Field was the only real party in interest; that, for
the purpose of settling the title to the real estate—a mat-
ter which was of no importance to any one but himself,

and which he might have proceeded with or not according to his own option and best judgment—he had a right to enter into the contract which he did enter into with Moore, in relation to the formal duties of the administrator and the fees which he was to receive; in other words, that he had a right to make a special contract with relation to payment for Moore's services before he would agree to recommend him for an appointment as administrator. He might have entertained the view that such administration was really not necessary, and have invoked it simply out of an abundance of caution—a proceeding which he would not institute, if it would cost him for services of the administrator the amount specified by the statute, and the peril to the business incident to placing its management in the hands of an inexperienced person, or person other than the one whom he had for years employed.

But it is alleged by the appellant that the contract is void under the statute of frauds, which requires a memorandum in writing of any agreement which is not to be performed within the period of one year from the making thereof; and it is insisted that under the law this estate could not be settled within the period of a year, for the reason that creditors were entitled to a year's time from date of notice given by the administrator in which to present their claims against the estate. It is, however, strenuously insisted by the respondent that the arrangement which was entered into was not a contract or agreement within the provisions of the statute of frauds; that, under the provisions of our statute, Mr. Field being the only heir to the estate, and there being no debts owing by the estate, he was the only person interested in any way in the estate, and the only one who had a right to petition for the appointment of an administrator; that

it was only for the purpose of clearing the title to real estate that the administration in his interest was necessary; that he had a right, before recommending an administrator, to stipulate that such administrator should waive the rights of possession and fees which he was entitled to under the statute, and that the agreement entered into with the administrator was, in substance, only an abandonment by the appellant of a right he might have insisted upon; that there was no specific thing that was done within a year, or in any other time. It seems to us that there is some merit in this contention; that time was not an essential element of the contract, but that the essential element was the waiving of certain rights.

In *President etc. of the Great Western Turnpike Co. v. Shafer,* 68 N. Y. Supp. 5, an action was brought to collect toll for passage through plaintiff's toll gate. The defendant claimed that about forty years before an oral agreement was made between one Buell, owner of a life interest in the farm, and the plaintiff, whereby Buell was to close up a private road, and as a consideration he and the tenants of the Buell farm should for all time be exempt from the burden of toll; that he closed the road, and kept it closed; and that under such agreement he had been allowed to use the road without the payment of toll. It was contended by the plaintiff that the contract pleaded was illegal under the provisions of the statute of frauds, in that it was an oral agreement not to be performed within one year. It was held that the statute did not apply, the court saying:

"As to the other claim, that it was an agreement not to be performed within a year, and therefore void, there seems to me to be very little to sustain it, and what argument there may be is specious. It was not an agreement to do anything. If plaintiff had agreed to carry the

plaintiff [Buell] for a number of years, or had agreed
to do any continuous labor for years, or to maintain its
turnpike for years, a ground for argument would be ap-
parent. No time here is fixed. The plaintiff might abol-
ish its gate within a year, but time was not involved.
The agreement at once and forever eliminated a burden.
It made an end of it then. There was no future for it—
no year or succession of years. The plaintiff sold its
power to vex the occupants of the farm, and that was all
there was of it."

The same reasoning might be aptly applied here. To
obtain the privilege of acting as administrator for a rea-
sonable compensation—a privilege which he could ob-
tain only with the consent of Field—the appellant waived
certain rights and privileges which are in no way con-
nected with or associated with time.

It is also contended by the respondent that the con-
tract, though oral, is not void because there is no express
stipulation that the appellant should refrain from doing
the things which he agreed not to do; that matters might
have taken such a course that, as between the parties to
the contract, the contract would have been fully performed
within a shorter period; that the appellant might have
died or resigned or have been removed. It has been well
established by authority that the test is not what the par-
ties expected the duration of the contract would be, but
whether of necessity it must be of such duration.

A very instructive and exhaustive case on this subject
is *Warner v. Texas & P. R. Co.,* 164 U. S. 418, 17 Sup.
Ct. 147, 41 L. Ed. 495, where the authorities are reviewed
at length by Mr. Justice Gray, and it was held that the
clause of the statute of frauds which requires a memo-
randum in writing of any agreement which is not to be
performed within one year from the making thereof, ap-
plies only to an agreement which, according to the in-

tention of the parties, as shown by the terms of their contract, cannot be fully performed within a year; and not to an agreement which may be fully performed within a year although the time of performance is uncertain, and may probably extend, and may have been expected by the parties to extend, and does in fact extend, beyond the year. In that case the action was brought by Warner in 1892, upon a contract made in 1874, by which it was agreed between the parties that, if the plaintiff would grade the grounds for a switch, and put on the ties, the defendant would put down the rails and maintain the switch for the plaintiff's benefit for shipping purposes as long as he needed it. The defendant pleaded that the contract was oral, and within the statute of frauds, because it was not to be performed within one year from the making thereof, and because it was a grant or conveyance of an estate of inheritance, and for a term of more than one year, in lands. In deciding that case the court cited with approval *Peters v. Westborough*, 19 Pick. 364, 31 Am. Dec. 142, where an agreement to support a girl twelve years old until she was eighteen was held not to be within the statute on the ground that the stipulation or understanding to bring it within the statute must be absolute and certain, and not susceptible of dependence upon any contingency; the court stating that the performance of the plaintiff's agreement with the child's father depended on the contingency of her life.

"If," said the court, "she had continued in the plaintiff's service, and he had supported her, and she had died within a year after the making of the agreement, it would have been fully performed. And an agreement by parol is not within the statute, when by the happening of any contingency it might be performed within a year."

Also, *Blanding v. Sargent,* 33 N. H. 239, 66 Am.
Dec. 720, where it was held that if, by its terms, or by
reasonable construction, the contract can be fully per-
formed within a year, although it can be done only by
the occurrence of some contingency by no means likely to
happen, such as the death of some person referred to in
the contract, the statute has no application, and no writ-
ing is necessary; and therefore that an agreement by a
physician to sell out to another physician his business in
a certain town, and to do no more business there in con-
sideration of a certain sum to be paid in five years, was
not within the statute, because, if the defendant had died
within a year from the making of the contract, having
kept his agreement while he lived, his contract would
have been fully performed.

And *Thouvenin v. Lea,* 26 Tex. 612, where the court
said:

"An agreement which may or may not be performed
within a year is not required by the statute of frauds
to be in writing; it must appear from the agreement it-
self that it is not to be performed within a year."

And *Weatherford etc. Ry. v. Wood,* 88 Tex. 191, 30
S. W. 859, 28 L. R. A. 526, where the court said:

"It seems to be well settled, that where there is a con-
tingency, expressed upon the face of the contract or im-
plied from the circumstances, upon the happening of
which within a year the contract or agreement will be
performed, the contract is not within the statute, though it
be clear that it cannot be performed within a year except
in the event the contingency happens. . . . The exist-
ence of the contingency in this class of cases, and not the
fact that the parties may or may not have contemplated its
happening, is what prevents the agreement from coming
within the scope of the statute."

The agreement in that case was that the railroad company should issue annually to one Wood a pass over its road for himself and his family, and should stop its trains at his house for ten years.

"Applying these principles," said the court, "to the case under consideration, we think it clear that the contract above set out was not within the statute. The agreement to give the pass and stop the trains was personal to Wood and family. He could not transfer it. In case of his death within the year the obligation of the company to him would have been performed, and no right thereunder would have passed to his heirs or executors. If it be held that each member of his family had an interest in the agreement, the same result would have followed the death of such member, or all of them, within the year. . . . The happening of the contingency of the death of himself and family within a year would have performed the contract in one case as certainly as in the other."

The court in the case of *Warner v. Texas & Pacific Ry. Co., supra,* said:

"If, within a year after the making of the contract, the plaintiff had died, or had abandoned his whole business at this place, or for any other reason had ceased to need the switch for the shipping of lumber, the railroad company would have been no longer under any obligation to maintain the switch, and the contract would have been brought to an end by having been fully performed."

It seems to us, after an investigation of all available authority on the subject, that the contract in this case was not the agreement or contract contemplated by the statute of frauds, as were contracts where the parties contracted to do or not to do certain things within a certain time.

But, whatever may be the authority on this branch of

the case, there is another and more potent reason why the appellant should not be allowed to plead this statute in his behalf, and that reason is founded on the doctrine of estoppel. Courts will not allow themselves to be used for the purpose of conferring benefits upon litigants who plead the illegality of a contract into which they entered, when there has been a part performance of the contract, and when the relative positions of the contracting parties have been changed by reason of the contract and its part performance. In accordance with this principle, an oral contract for the sale of real estate which falls within the statute of frauds can yet be enforced if there has been a part performance or execution of the contract. The same principle is applicable here. The agreement was carried into effect, and the appellant accepted the office and qualified in accordance with the terms of the contract, and there is no principle of law or equity that would permit him to plead the statute of frauds to escape the liability of a contract, the benefits of which he still asks to enjoy. For it will be noted that he is not seeking to avoid the contract so far as the acceptance of the office under the contract is concerned, but he desires to maintain the benefits of the contract under which he obtained the office, and assail it in relation to the compensation of the office; thereby maintaining all the benefits, while escaping all the liabilities, of what he alleges was an illegal contract. He agreed not to accept the statutory fees, and not to take possession of the estate, and he will not be permitted to do what he agreed not to do, while practically receiving the benefits of the agreement of the other party to the contract. This is not an action by Field to enforce this alleged illegal contract, but it is an action by the appellant to obtain the emoluments of an office

which he says was obtained by him by virtue of an illegal contract to which he was a party.

This conclusion renders unnecessary a discussion of the other points raised in the briefs.

The judgment is affirmed.

FULLERTON, C. J., and MOUNT, HADLEY, and ANDERS, JJ., concur.