[No. 20127. Department Two. January 6, 1927.]

DENT LUMBER & SHINGLE COMPANY, *Respondent*,
v. CEDARHOME LUMBER COMPANY, *Appellant*.[1]

[1] FRAUDS, STATUTE OF (8)—AGREEMENTS NOT TO BE PERFORMED WITHIN ONE YEAR—POSSIBILITY OF PERFORMANCE. An oral agreement to extend the time for making payments upon a conditional sales contract for two years is not within the statute of frauds because not to be performed within one year, where it appears that, although it would probably take that length of time, it was not impossible and there was nothing to prevent the party from making complete performance within one year.

[2] CONTRACTS (2, 4)—REQUISITES—MUTUALITY—CERTAINTY. An agreement to improve a mill plant so as to enlarge the output and to allow another to handle the output exclusively at a certain rate, until a conditional sales contract for the mill was fully paid up, is not void for lack of mutuality or so indefinite and uncertain as to be unenforceable, although there is no agreement to cut a certain amount or operate the mill at a certain rate.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered March 11, 1926, upon a directed verdict in favor of the plaintiff, in an action upon contract. Reversed.

*Marion A. Butler, Phil J. Weiss* and *Tucker, Hyland & Elvidge,* for appellant.

*Kerr, McCord & Ivey,* for respondent.

ASKREN, J.—Respondent brought this action to repossess itself of a lumber mill, equipment and supplies previously sold to appellant under a conditional sales contract, and which was claimed to be in default.

Answer was filed denying default, and setting up a cross-complaint which, in substance, alleged an oral agreement between the parties through their respective

[1]Reported in 252 Pac. 141.

officers, whereby the appellant was to enlarge and improve the capacity of the mill and to grant to respondent, a brokerage company, the exclusive right to handle all appellant's products, and receive one dollar per thousand therefor; that, in consideration of these things to be performed by the appellant, respondent agreed to extend the time of payment under the contract for a period of two years, or longer if necessary, and as respondent disposed of appellant's product, to take payment out of the output of the mill; that, in reliance thereon, five months' labor and thirty-five thousand dollars in cash were spent to improve and enlarge the mill, but that the promises were falsely made and, after twenty-nine days of operation, respondent declared the contract in default and seized the property.

The court, after hearing the evidence, directed the jury to bring in a verdict for respondent, holding that the agreement set forth in the cross-complaint was within the section of the statute of frauds requiring it to be in writing because it was not to be performed within one year from the date thereof, and also that the contract was void for indefiniteness.

[1] The decisive point with relation to the first ground held by the court, i. e., that the contract should have been in writing because not to be performed within one year, is controlled by the evidence upon this point. Counsel for both sides are hardly variant as to the effect of our holding upon this question, but each deduces a different result from the evidence. It would extend this opinion to undue length to set out all the testimony offered by appellant upon this question, as both sides were keenly alert to our previous decisions as to the requirements of such a contract in order to escape the withering effect of the statute of

frauds. A sample of the testimony of Mr. Bell, the president of appellant, is as follows:

"Q. Just what was the nature of this oral agreement which you made with the Dent Lumber & Shingle Co.?

"A. I went to Mr. Dent and told him I had a payment due on the 5th of April and I had been to some expense in preparing and fixing the mill before that time, and I was afraid Mr. Pratt was going to crowd me for payment. I was paying practically $1,000 a month and at that date, on April 5th, there was $3,000 due; I had not paid anything since February, and he was going to crowd me, so I went to Mr. Dent and told him about it and he said he would take the contract over, pay Mr. Pratt, and extend the time as long as I wanted, if I would give him a dollar a thousand for the lumber, would sell him the lumber, and he would give us two years longer, if I wanted it. And he went to Mr. Pratt and paid him the money and took over the contract."

On cross-examination he testified:

"Q. There wasn't any string tied to that at all, that you were getting a two-years' extension? A. No, there was not. Q. And he agreed positively with you that he would not call upon you for any balance due under that period of two years? A. No agreement of that kind. Q. I mean he said that to you? A. He said that I could have two years, or longer if I wanted it. Q. It was an oral agreement? A. Yes, sir. Q. And this was for two years' time and longer, if necessary. Then, if I understand you correctly, he said to you, 'I will not call upon you for two years under the circumstances for that balance, provided that you did the things that you were to do, and if you need more time I will give you more time than two years.' A. Yes, sir. Q. That is correct, is it? A. Yes, I understood, when he told me this, that I could pay at once if I wanted to, but if I wanted more time I could have the time. I didn't have to pay it then, he would extend the payment two years or longer, if I needed it. He didn't care how long it was as long as he had the output of my mill. . . ."

"Q.  In other words, after he made you the promise in April, 1924, in view of the condition of profits and the length of time that you stopped, both of you knew that you could not possibly pay off this $10,000 within twelve or fifteen months?  A. No, we didn't know that. We didn't think the market would stay down.  Everyone was feeling the market would be up.  Q. That was the purpose of getting two years, because you thought that it would be so?  A. We didn't know.  I wanted to be on easy street.  If I could pay him off in two months, and I felt I wanted to, I could pay him off, if I would have the money; if I couldn't, I would have the time."

It will be seen from the above examination that appellant's testimony showed that the agreement was not one which, by its terms, could not be performed within one year.  There was a possibility and even a probability that a longer time would be taken, but it was the sort of contract which was subject to be paid off at any time from the returns of the mill or from outside funds, if appellant desired.

In *In re Field's Estate,* 33 Wash. 63, 73 Pac. 768, we announced the test to be not the expected duration of the contract, but the necessity of the duration being beyond the year.  In our recent decision in *Tonkoff v. Roche Fruit & Produce Co.,* 137 Wash. 148, 242 Pac. 3, this principle was reaffirmed.  Respondent relies upon *Hendry v. Bird,* 135 Wash. 174, 237 Pac. 317, 240 Pac. 565, as announcing a modified rule.  But we think a critical reading of that decision does not justify such a contention.

In that case, the contract was for shares of stock which were to be issued in consideration of Hendry giving his services to the defendant company, and to be paid for by the deduction of a certain amount each month from his salary, and it of necessity required a period of five years to complete the services and pay-

ments required under the contract, both services and payments being integral parts thereof.

The same is true of *Tracy v. Barton,* 139 Wash. 440, 247 Pac. 734, where the plaintiff was not to be paid for his services until the defendant had resided upon certain of the public lands for the statutory period required to homestead the same. This time was three years.

Conceding, without deciding, that the evidence failed to establish that there was likelihood of the receipts from the mill being sufficient to pay the amounts due within the year, still there was no requirement that the payments be made alone from the proceeds of the mill, and as we have heretofore said, the payments could have been made at any time.

[2] Nor do we find that this oral contract is void because too indefinite and uncertain. The contention of respondent in this connection is succinctly stated in its brief as follows:

"It will be remembered that, in the contract involved in the case now before the court, at no time did Mr. Bell agree to operate the mill in question at any particular rate or for any particular time, nor did he agree to produce a given output for any given time. He claimed that the respondent was to give him two years longer, if necessary, within which to pay up the balance, making this extension contingent upon nothing and agreeing to do nothing in consideration of the extension."

But this is hardly a correct statement of the situation. It is true that, by the terms of this oral contract, appellant did not agree to cut a certain amount of lumber, nor operate at a particular rate, yet it did agree to do certain positive things in consideration for the extension, namely: to improve the plant so as to enlarge its output and to permit respondent to handle

this output at a financial benefit to it of one dollar per thousand.

In *Sultan R. & Timber Co. v. Great Northern R. Co.*, 58 Wash. 604, 109 Pac. 320, there arose the question of the mutuality of a contract between the parties whereby the railroad company agreed to carry between certain points, and at a certain rate, all logs tendered to it by the timber company. It was claimed that, since there was no agreement to ship any particular quantity, there was a lack of mutuality. This contention was disposed of in the following language:

"Nor was there a want of mutuality because there was no agreement to ship any particular quantity of logs. The contract, as we view it, was one by which the appellant promised to carry between the points named all logs that the respondent should tender it for carriage, be the same much or little. Such a contract, when founded upon a consideration independent of the mere promise to pay the contract rate, is not void for want of mutuality. It is this fact—that there was an independent consideration—that differentiates the case at bar from the cases cited and relied upon in appellant's brief."

Nor is the contract so indefinite that it cannot be enforced. It is said that our decision in *Spokane Canal Co. v. Coffman*, 61 Wash. 357, 112 Pac. 383, is authority for the contention that the contract is too indefinite to be enforced. In that case, the purchaser of land under a contract claimed an oral agreement whereby no foreclosure would be demanded under the written contract, if the purchaser would remain on the land, cultivate the same, and set out an orchard, and at the end of five years, if the purchaser had not paid for the land, that there would be a superabundance of fruit growing on the land to pay the same. We held it void for want of definiteness and mutuality. It was said:

"In other words, there was no obligation on the part of the appellants to pay for the land within five years, and no definite time thereafter when payment should be made with fruit, and appellants were not required to remain upon the land or to cultivate it."

In the instant case, appellant was bound to increase the capacity of the mill; permit respondent to handle the output; pay one dollar per thousand feet for its handling, and to pay its debt to respondent. It claims to have actually entered upon the performance of the contract, to have expended five months' of labor and thirty-five thousand dollars in cash in improving the mill to increase its capacity as required by the contract. It will hardly do, under such a state of facts, to hold that the contract was too indefinite to be upheld by the law.

The judgment is reversed, with instructions to grant a new trial.

TOLMAN, C. J., PARKER, BRIDGES, and MACKINTOSH, JJ., concur.