ROBERT L. MONTGOMERY, Respondent, v FUTURISTIC FOODS, INC., et al., Appellants.

Second Department, December 26, 1978

APPEARANCES OF COUNSEL

*Goidel, Goidel & Helfenstein, P. C. (T. Alan Wyle* of counsel), for appellants.

*Daniel J. Pinsky* for respondent.

### OPINION OF THE COURT

SHAPIRO, J. P.

In an action to recover damages for breach of contract and unfair competition, based upon defendants' unlawful sale of cassette tapes to the general public, to which tapes plaintiff claims to have a common-law copyright, defendants appeal, as limited by their brief, from so much of an order of the Supreme Court, Kings County (COMPOSTO, J.), "as dismisses the affirmative defense of the violation of the Statute of Frauds." On the facts in this record, the order should be reversed insofar as appealed from and the branch of plaintiff's motion which sought to strike defendants' first affirmative defense should be denied.

The complaint alleges that plaintiff is "a pioneer in using videotape to train salesmen and sales managers" and that in July, 1976 he agreed with defendant Futuristic Foods, Inc. (Futuristic) to edit 25 scripts furnished by Futuristic and to produce audio cassettes thereon for $1,600. It further alleges that "[u]nder said agreement and as an integral part thereof, it was agreed that the said cassettes would be utilized for the exclusive use of the sales personnel of Futuristic Foods, Inc. and were not to be sold to any other persons, firms or corporation[s]" and that plaintiff produced and delivered the completed cassettes and received the agreed price.

The complaint further alleges that the principals of Futuristic thereafter organized the codefendant, Mind Trek, Inc., and utilized that corporation to sell the cassettes to the public. The complaint seeks compensatory and punitive damages for breach of contract, for unfair competition, and, in effect, for violation of a common-law copyright. In his bill of particulars plaintiff stated that the agreement restricting the sale of the cassettes was oral.

In passing upon the validity of the Statute of Frauds defense, we must assume that plaintiff fully executed his part of the agreement in that he produced and delivered the cassettes to Futuristic within two months after the agreement was made. However, accepting plaintiff's version of the oral con-

tract as correct, Futuristic could not perform its obligations within one year from the contract's inception since it would be restricted *in perpetuity* against selling the cassettes to anyone other than its own personnel.

Section 5-701 (subd a, par 1) of the General Obligations Law includes among the agreements required to be in writing, one which "[b]y its terms is not to be performed within one year from the making thereof".[1]

The issue is whether the clause "not to be performed within one year" is to be interpreted as though it were followed by the words "unless the party seeking to enforce the contract has completed performance within that period", so that the statute would not apply where it was contemplated that the asserter of the contract was able to (and did) complete its performance within that year, although the other party had not.

The majority rule in this country, and the one asserted in the Restatement, follows the English rule established in 1832 in *Donellan v Read* (3 B & Adol 899; see, also, 7 Halsbury's Laws of England [1st ed], p 366; 3 Williston, Contracts [3d ed], § 504; 2 Corbin, Contracts, §§ 457, 458), that "[w]hen one party to a contract has completed his performance, the one-year provision of the Statute does not prevent enforcement of the promises of other parties" (Restatement, Contracts 2d [Tentative Draft No. 4, 1968], § 198, subd [2]). This is so notwithstanding the recognition that such an interpretation is a departure from the plain words of the statute, that it lacks "[l]ogical consistency" (2 Corbin, Contracts, § 457, p 574), and that "the reasons upon which it has been based are not any too clearly stated in the opinions" *(supra,* p 574).[2]

---

1. This is almost the exact counterpart of the *"infra annum"* clause contained in section 4 of the English statute entitled "An Act for Prevention of Frauds and Perjuries" enacted in 1677 (29 Charles II, ch 3, § 4), which applied to agreements "not to be performed within one year from the making thereof".

2. In analyzing the decision in *Marcy v Marcy* (91 Mass 8), which followed the New York minority rule, Professor Corbin admits (2 Corbin, Contracts, § 458, pp 579-580) that the court's conclusion based on the wording of the Statute of Frauds "was logical and reasonable, that the defendant's promise is always within the statute if it is one that cannot be performed within one year; but the course of decisions has been strongly the other way, for reasons not of logic but of public welfare and policy. These are, substantially, that a narrow application of the statute under modern conditions would do more harm than good, although the courts may not have so expressed themselves." Professor Corbin then argues *(supra,* p 581): "We should therefore support the majority courts, even though they may have been directed by instinct rather than by logic, and even though they may have actually modified the statute of

The minority rule, which has been generally followed in New York, was explained in *Broadwell v Getman* (2 Denio 87, 89-90) as follows: "[I]t would seem difficult to raise a doubt upon the terms of the. statute. An agreement is an entire thing, and where that cannot be completely executed, *on both sides,* until more than a year has elapsed, the case falls within the express words of the enactment. It is also within its spirit, for 'the mischief meant to be prevented by the statute, was the leaving to memory the terms of a contract for longer time than a year. The persons might die who were to prove it; or they might lose their faithful recollection of the terms of it.' *(Bailey, J.* 11 *East,* 159; 1 *Ld. Raym.* 316.) * * * What difference does it make that one party can, while the other cannot, complete the contract within a year? Such an agreement is not, in terms, excepted from the statute, and the reason for the enactment applies to it with full force."

This interpretation of the Statute of Frauds was followed in *Marcy v Marcy* (91 Mass 8, 14), where it was pointed out that the underlying purpose of the Statute of Frauds was to discourage perjury in the testimonial recital of events long past, and that this danger is no less present where the one who relies upon the alleged oral agreement claims that he has performed within the year. The question still remains (as is clearly the case here)—to what terms did the *other* party orally agree?

Although the cases in this State have not been wholly consistent (cf. *Great Western Turnpike Co. v Shafer,* 57 App Div 331, affd 172 NY 662, which is distinguishable on its facts),[3] it has been generally agreed that New York follows the

frauds". For the reasons set forth in the body of this opinion, I cannot follow that thought process, for giving it full sway it could be applied not only to the Statute of Frauds, but to other statutes such as the various Statutes of Limitations. In all such cases there is necessarily a recognition that a plaintiff may have a cause of action which, except for the statute, he could enforce, but that the over-all purpose of justice is better served by laying down a hard and fast rule for enforcement in all cases which come within the wording of the statute. Furthermore, adoption of the Corbin theory assumes that the courts have the right to modify a statute simply because they do not like its effect. That is not the proper function of a court.

3. In that case *(Great Western Turnpike Co. v Shafer,* 57 App Div 331, 334, affd 172 NY 662, *supra)* the Appellate Division, Third Judicial Department, held that the agreement was not subject to the Statute of Frauds because it did not impose any future obligations on the defendant but merely "*at once* and forever eliminated a burden [a requirement for the payment of tolls]. *It made an end of it then"* (emphasis supplied). The decision in that case, properly construed, merely means that a present release of an obligation is not within the Statute of Frauds.

minority rule.[4] Thus, New York Annotations to the Restatement of the Law of Contracts (Pocket Supplement, 1933, § 198, p 95, referring to *Tyler v Windels,* 186 App Div 698, and *Sophie v Ford,* 230 App Div 568), states that "[t]he New York statute does not expressly except contracts which have been fully performed on one side and the decisions do not in general make this exception", and it then points out that "[t]hese decisions are clearly *contra the last sentence of the section* [of the Restatement]". The "last sentence" of section 198 of the original (1932) Restatement stated that where there had been complete performance by one of the parties the contract was not to be deemed within the Statute of Frauds.

In Simpson, Contracts (2d ed, headnote of § 89, p 173), the author says: "By the majority rule, full performance by the plaintiff takes the oral contract out of the statute of frauds * * * By the minority rule, only full performance on both sides will serve to take the oral contract out of the statute."

The text then elucidates: "By the majority rule, even though there has been full performance on one side during the year, the promise of the other party of a performance beyond the year is within the statute". In the footnote to that statement the author states: "In New York, neither part performance nor full performance on one side will take the oral contract out of the one year statute. Only full performance on both sides will do so. *Tyler v Windels,* 186 App Div 698, 176 NYS 762 (1919), affirmed 227 NY 589, 125 N.E. 926. In accord, *Marcy v Marcy,* 91 Mass. 8 (1864); *Pierce v Payne's Estate,* 28 Vt. 34 (1855); *In re Hippe's Estate,* 200 Wis. 373, 228 N.W. 522 (1930)."

Consistent with this, Simpson and Duesenberg assert (6 Encyclopedia of New York Law, Contracts, § 609, p 371) that "[i]n New York only full performance on both sides" would take the oral contract out of the one-year provision of the Statute of Frauds (see, also, Ann. 6 ALR2d 1123; *Newkirk v Bradley & Son,* 271 App Div 658; *Kelley v Champlain Studios,* 223 App Div 388, 392-393; *Grissman v Union Carbide Corp.,* 279 F Supp 413, 416).

Both on the New York precedents cited (although there apparently is no clear-cut Court of Appeals case so holding), as well as my belief that the Restatement rule encourages, or at

4. Peculiarly enough, neither side briefed nor even adverted to the fact that the rule laid down in the Restatement, while adopted as the law in most States, was not accepted by a number of other States including New York.

least permits, the perjury which the Statute of Frauds was intended to eliminate, the restriction as to the use of the cassettes, upon which the plaintiff's complaint (insofar as it relates to breach of contract) is predicated, is not enforceable, since such agreement would necessarily require compliance with and continuance for more than one year. The alternative to so holding would be that at a time when the other party may have no effective way of disproving the claim, such as at a time long years after a delivery had been made, when memories may have faded and witnesses (or the principal of the defendants themselves) may have died, a claim could be prosecuted solely on the testimony of a plaintiff as to the making of an oral contract. To outlaw the defense of the Statute of Frauds in such cases would, in effect, permit recovery on a contract where all of its facets, including complete performance by plaintiff, rested solely on his spoken word. It was this very evil that the Statute of Frauds was intended to eliminate.

We therefore hold that the affirmative defense of the Statute of Frauds should not have been stricken.

COHALAN, HAWKINS and O'CONNOR, JJ., concur.

Order of the Supreme Court, Kings County, dated December 8, 1977, reversed insofar as appealed from, with $50 costs and disbursements, and the branch of plaintiff's motion which sought to dismiss defendants' first affirmative defense, is denied.