OPINION OF THE COURT
Arthur D. Spatt, J.
These actions concern the rights and obligations of the two shareholders of a close corporation[1] which owns and operates a *865 retail card and gift shop located at 578 Steward Avenue, Beth-page, New York.
In action No. 1, in a rambling complaint, plaintiff Richard K. Roos (herein referred to as Roos) alleges that he is a shareholder in DJR Card & Gift Shop, Inc. (herein referred to as DJR), and that he is entitled to certain benefits under a shareholders’ agreement with James Aloi, Sr. (herein referred to as Aloi), the only other shareholder in DJR. Roos seeks, inter alla, to enforce the shareholders’ agreement and compel DJR to pay certain moneys allegedly due under the said agreement. Roos further requests an accounting, the appointment of a receiver and punitive damages.
In action No. 2, Aloi alleges, inter alla, that on July 13, 1981, an oral agreement was entered into wherein Roos agreed to sell his stock in DJR to Aloi. Aloi seeks to enforce the said oral agreement. In addition, Aloi alleges that Roos made fraudulent misrepresentations causing him to sustain money damages.
A joint trial of both actions was directed by order dated November 28, 1984 (Velsor, J.).
Aloi has interposed multiple defenses to enforcement of the shareholders’ agreement in action No. 1, including the following: “Enforcement of this agreement is contrary to the public policy of this state since it mandates payments to the shareholders regardless of the rights of the creditors of DJR.”
FINDINGS OF FACT
Richard K. Roos is the president, a director and a stockholder of Richard K. Roos Ltd., a corporation formed in 1979 for the purpose of making loans to other corporations and to Roos himself. Interest on these loans is the sole income of Ltd. In 1982, Roos transferred all of his stock to his former wife Patricia, except for one share retained by Roos who stated that he is the sole member of the board of directors. Roos testified that he was present at a board of directors’ meeting which authorized Ltd. to enter into the subject shareholders’ agreement.
Aloi was in the business of operating a retail card shop. In 1979, he was the owner and operator of a store known as “Debbie & Jim’s” located at 400 North Wantagh Avenue, Wantagh, New York. Roos and Aloi first met in 1979 at Aloi’s retail store when they were introduced by a third party with regard to a possible loan by Roos to Aloi. Roos agreed to have Ltd. lend Aloi $5,000 on condition that Aloi incorporate the business, which he did under the corporate name of Debbie & Jim’s Card Shop Inc. (herein referred to as Debbie & Jim’s). Thereafter, an additional *866 loan in the sum of $5,000 was made by Ltd., and certain security agreements were executed by Debbie & Jim’s.
The parties saw a newspaper advertisement regarding a retail stationery store for sale in Bethpage, New York, located at 578 Stewart Avenue, Bethpage, New York. After seeing the store and reviewing the gross receipts and expenses, the parties agreed to purchase the Bethpage store on the following terms: Roos would buy 50% of the stock of Debbie & Jim’s from Aloi for the sum of $17,500; and Roos and Aloi would together form a new corporation, DJR Card and Gift Shop Inc., in which Roos and Aloi would each own 50% of the outstanding stock. In this venture, Roos would contribute another $17,500, and Aloi would turn over the $17,500 he had received for 50% of Debbie & Jim’s. DJR would then purchase the retail store for the total sum of $35,000.
DJR was incorporated in or about May 1980. Subsequent to the signing of the shareholders’ agreement, DJR purchased all the shares of stock and assets of578 Page, Inc., the then owner of the retail store. DJR also received an assignment of said corporation’s interest in the lease of the said store.
The down payment for the purpose of the Bethpage store was made by Ltd; and, thereafter, the shareholders’ agreement was negotiated and signed by Roos and Aloi. By the terms of the agreement, Roos and Aloi were each to own 50% of the outstanding stock of DJR. Roos was to be president and Aloi vice-president of the corporation. Aloi was to be a full-time working partner. One of the terms of the agreement essential to Roos’ cause of action is paragraph (8) (B) which provides as follows:
“B) It is hereby agreed that the following payments and or salaries shall be made according to the following formula * * *
“2. From January 1, 1981 forward so long as the Corporation grosses $5,000.00 per week, both Richard k. rocs, ltd. and aloi shall receive $350.00 per week.”
By an addendum to the main shareholders’ agreement dated June 2, 1980, paragraph 8 (B) was amended in a manner not relevant to the determinations herein. The court notes that while the main agreement was signed by only Roos and Aloi, the addendum agreement was also signed by Aloi individually and on behalf of DJR.
DJR did, in fact, gross in excess of $5,000 per week for some period of time, but Aloi failed and refused to make the prescribed payments of $350 per week to Ltd.
It is clear from the undisputed evidence that Roos and Aloi voluntarily and intentionally entered into a shareholders’ *867 agreement wherein each was to own 50% of the outstanding stock of DJR. The agreement itself so states in express, unambiguous language. The accountant set up the books and records so as to reflect such ownership. The tax returns indicated such ownership. Both parties expressly conceded the existence of this relationship in their pleadings. Moreover, Aloi in his testimony conceded this relationship.
After DJR’s purchase of the Bethpage retail store, Aloi, his son James Aloi, Jr., and Debbie Aloi, his daughter-in-law, operated and managed the store on a seven-day per week basis. Although the corporation grossed in excess of $5,000 per week Aloi refused to make the prescribed $350 weekly payments to Ltd., and this litigation resulted.
During this period, attempts were made by Aloi to purchase Roos’ stock interest in the corporation. In action No. 2, Aloi contends that he and Roos entered into an oral agreement wherein Roos agreed to sell his stock to Aloi and that Roos breached that agreement.
The court finds that on July 13, 1981, Roos and Aloi entered into an oral agreement wherein Roos agreed to sell his 50% stock interest in DJR to Aloi for the sum of $55,000 payable in 120 monthly installments. The terms of the oral agreement were set forth in a tape recording made by attorney William H. Kain at his office on July 13, 1981. At that time, the parties agreed that they would enter into a more formal written contract amplifying the terms of the oral agreement.
Further, the court finds that, based upon the agreement by Roos to sell his stock to him, Aloi made certain payments of corporate obligations, including a $1,700 monthly payment on the mortgage on the retail store.
The court finds that, thereafter, Roos changed his mind and declined to sell his stock. No written agreement with regard to the sale of stock by Roos to Aloi was consummated; no money was paid to Roos for the stock and the stock was never delivered to Aloi. The Aloi cause of action, therefore, is based upon the oral agreement as formalized by the tape recording. In addition, Aloi alleges that the representation by Roos to sell his stock was fraudulent, and he relied upon said representation and, as a result, paid certain corporation obligations with funds received from'his son.
CONCLUSIONS
At the outset, it must be noted that the transactions under scrutiny involve a close corporation so that failure to adhere to *868 the intricacies of the Business Corporation Law will not necessarily be fatal as to this type of corporation which, in this case, is equally owned by only Roos and Aloi. The court will not require strict compliance with corporate formalities where this will serve to frustrate the intention of the parties and create injustice. This is not an agreement between the corporation and an outsider, but between the two sole equal shareholders of a close corporation. Where warranted, this court may, in effect, disregard the corporate form and treat the shareholders as copartners. Further, in such close corporations, certain formalities may be waived. (See, Leslie, Semple & Garrison v Gavit & Co., 81 AD2d 950 [3d Dept 1981]; Matter of Weiss & Gordon, 32 AD2d 279 [1st Dept 1969]; Matter of Ostwald, 20 Misc 2d 1001 [Sur Ct, Richmond County 1959].) Courts should not shut their eyes to the realities of business life. (Hoff v Long Is. Fuel Corp., 233 App Div 117 [2d Dept 1931].)
The defendant further asserts that the agreement is void as against public policy because it requires mandatory payment to the shareholders, irrespective of creditors’ claims, and thereby effects a fraud on the creditors. This defense is also without merit. Salaries and executive compensation are usually determined by the board of directors in its discretion, and may be fixed by a “shareholder agreement”. (Henn and Alexander, Corporations § 278 [3d ed].) The fixation of compensation to executive officers and employees of a corporation is a question to be determined by the corporation itself, through its directors or stockholders; and neither the people of the State nor the public generally are interested. (15 NY Jur 2d, Business Relationships, § 970.)
As to the right of creditors, the courts of this State have, under certain circumstances, adopted the “trust fund” theory. Under this theory, the assets of a corporation, in certain situations, constitute a trust fund for the benefit of creditors. (Matter of Baldwin Trading Corp., 8 NY2d 144 [1960]; Darcy v Brooklyn & N. Y. Ferry Co., 196 NY 99 [1909]; Bartle v Finklestein, 19 AD2d 256 [4th Dept 1963].)
This “trust fund” theory envisions situations where a corporation attempts to divest itself of all or a substantial part of its property without affording an opportunity to its creditors to present and enforce their claims. (See, the cases cited in the paragraph above.) Also, the “trust fund” theory is applicable where a corporation is insolvent and there are preferential payments or conveyances. (New York Credit Men’s Adj. Bur. v Weiss, 305 NY 1 [1953]; see, Hurd v New York & Commercial *869 Steam Laundry Co., 167 NY 89 [1901] [a corporation sold its plant to another corporation with payments received by the individual shareholders in derogation of creditors’ rights]; Bartle v Finklestein, supra [insolvent corporation officers and stockholders transferred assets to another corporation in which they were officers and the only stockholders]; Stefanzyn v Brooklyn Natl. Bank, 251 App Div 259 [1st Dept 1937] [transfer of all corporate assets to a bank to satisfy personal indebtedness of the corporate directors]; Biscayne-Gallowhur Corp. v Smith, 32 Misc 2d 304 [Sup Ct, NY County 1962], mod 17 AD2d 930 [1st Dept 1962], affd 14 NY2d 629 [1964] [the setting aside of the transfer of major assets to an officer in an insolvent corporation upon action brought by a judgment creditor]; United Parcel Serv. v Norris Corp., 102 Misc 2d 231 [Sup Ct, Nassau County 1979] [creditor sues to enjoin sale of all assets by an insolvent corporation without notice to creditors]; Heisler v Halberstam, 74 Misc 2d 394 [Civ Ct, NY County 1973] [conversion of corporate property to sole stockholder in violation of agreement to sell such corporate assets].) In each case the plaintiff was a creditor or the assignee of a creditor.
The facts in this case are entirely different from any of the situations in the “trust fund” or “creditor” cases above set forth. Significantly, no creditor is complaining about the salary due to the plaintiff. Further, there has been no credible proof that the payment of the weekly salary to Roos would impair the rights of any creditor. In the court’s view, this “trust fund” rule of law is not available to Aloi to invalidate the subject shareholders’ agreement. No cases are cited by defendants in their memorandum of law, nor has the court discovered any authority for the voiding of a shareholders’ agreement on this theory by one of the participants who is not a creditor.
A review of the cases set forth in defendants’ memorandum of law does not uphold defendants’ position. In McQuade v Stoneham (263 NY 323 [1934]), the agreement was not between all the shareholders. Also, McQuade was decided prior to the enactment of Business Corporation Law § 620 (a) which provides as follows: “(a) An agreement between two or more [stockholders] if in writing and signed by the parties thereto, may provide that in exercising any voting rights, the shares held by them shall be voted as therein provided, or as they may agree, or as determined in accordance with a procedure agreed upon by them.”
Also, defendants’ reference to cases involving Debtor and Creditor Law § 273 are clearly inapplicable since there has been no “conveyance” within the purport of that statute.
*870 We are not herein faced with the payment of large and unjustified salaries to officers and directors, irrespective of corporate earnings. This is an agreement by all of the shareholders providing for contingent salaries to be paid only in the event the corporation earns a certain gross amount.
The compensation payable to Ltd. is not fixed, but is paid on a contingent basis, to wit: it is determined by sales volume. (See, 2 O’Neal, Close Corporations § 8.12, at 102; Gottfried v Gottfried, 112 NYS2d 431, 461 [Sup Ct, NY County 1952].)
The defendants have failed to establish that this agreement was entered into to avoid paying creditors. Nor, for the reasons above set forth, have the defendants established that the shareholders’ agreement is contrary to the public policy of this State insofar as creditors’ rights are concerned. The enforcement of the agreement will not be proscribed on this ground.
Accordingly, the court determines that the shareholders’ agreement dated June 6,1980, and its addendum dated June 27, 1980, is valid and enforceable. Roos is entitled to certain monetary benefits by the terms of the said agreement. The requests by Roos for an accounting, the appointment of a receiver and money damages for breach of the agreement are referred, by consent, to a judicial hearing officer to hear and determine.
Inaction No. 2, the issue presented is the enforceability of the oral agreement entered into on July 13, 1981, by the terms of which Roos agreed to sell his stock to Aloi. As stated above, the court found that the parties did enter into the oral agreement memorialized by the tape recording in evidence. Roos contends that this oral agreement is unenforceable by reason of the Statute of Frauds.
Shares of stock constitute securities within the provisions of the UCC article 8. (See, Center v Hampton Affiliates, 106 AD2d 422 [2d Dept]; in particular, see, UCC 8-319; see also, Burnside & Co. v Havener Sec. Corp., 25 AD2d 373 [1st Dept 1966]; Pantel v Becker, 89 Misc 2d 239 [Sup Ct, Sullivan County 1977]; 11 ALR4th 1036, § 3, at 1041-1043.)
Moreover, the subject oral agreement is unenforceable since the monthly payments for the stock were to be made over a fixed 10-year period. Every oral agreement is void which “[b]y its terms is not to be performed within one year from the making thereof” (General Obligations Law § 5-701 [a] [1]).
Aloi contends, however, that the tape recording setting forth the terms of their oral agreement constituted a “writing” within both above-stated statutes so as to remove this agreement from the purview of the Statute of Frauds.
*871 A review of the authorities in this regard reveals a paucity of authorities on this subject in this State. However, in Sonders v Roosevelt (102 AD2d 701 [1st Dept 1984]),[2] it was held that a recorded telephone conversation “is not a note or memorandum in writing subscribed by the defendant in compliance with * * * General Obligations Law [§ 5-701 (a)]”. In the absence of a decision on this subject by the Court of Appeals or the Appellate Division of this Department, this court is required to follow the rule in Sonders. (See, Mountain View Coach Lines v Storms, 102 AD2d 663 [2d Dept 1984].)
Accordingly, the court finds that the oral agreement proffered by Aloi is unenforceable by reason of the provisions of the Statute of Frauds above set forth, and the complaint of plaintiff Aloi based on the said oral agreement is dismissed.
Settle judgment on notice, providing space for the appointment of a judicial hearing officer and a date for the trial of the remaining issues in action No. 1, said trial to take place within one month from the date hereof.

. A close corporation is defined as a corporation whose shares are held by a single stockholder or closely knit group of shareholders. Generally, there are no public investors, and the shareholders are active in the conduct of the business. In a close corporation, a few shareholders are in control of corporate policy and are in a position to benefit personally therefrom. (See, Black’s Law Dictionary 308 [5th ed 1979].)

. Affirmed by the Court of Appeals (64 NY2d 869 [1985]) subsequent to the rendering of this decision.