William H. BURKE, Plaintiff–Appellee, Cross–Appellant,

v.

Gus BEVONA, as President of Local 32B–32J, Service Employees International Union, AFL–CIO, Defendant–Appellant, Cross–Appellee.

Nos. 1197, 1324, Dockets 88–7124, 88–7136.

United States Court of Appeals, Second Circuit.

Argued June 6, 1988.

Decided Jan. 18, 1989.

Barry H. Garfinkel, New York City (Skadden, Arps, Slate, Meagher & Flom, Peggy L. Kerr and Eric Friedberg, New York City, of counsel), for defendant-appellant-cross-appellee.

Jeffrey Craig Miller, New York City (Miller and Korzenik, New York City, of counsel), for plaintiff-appellee-cross-appellant.

Before VAN GRAAFEILAND, MINER and MAHONEY, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Local 32B–32J, Service Employees International Union, AFL–CIO (hereinafter "Local 32B"), appeals from a $420,904.54 judgment of the United States District Court

for the Eastern District of New York in favor of William H. Burke. The judgment followed two jury trials before Judge Restani of the Court of International Trade, sitting by designation. Burke cross-appeals from orders of Judge Restani which preceded and followed the jury verdict on the first trial and also seeks reversal of a pre-trial, partial summary judgment order of then District Judge Platt.

The pertinent facts may be summarized briefly. In 1981, while Burke was the elected Secretary–Treasurer of Local 307 of Service Employees International (hereinafter "Local 307"), a proposal was made to merge Local 307 into the much stronger and larger Local 32B. Gus Bevona, the elected President of Local 32B, and John Sweeney, the elected President of Service Employees International, met with officers of Local 307 seeking to secure their support for the merger. Burke contends with some inconsistency that, during this solicitation of support, Bevona orally promised him that he would have a job with Local 32B "for as long as you live", "for as long as you want, until you retire", "until I retire", and that Sweeney orally indicated that he stood behind Bevona's commitment. The merger was effected in March 1982, and Burke was employed as a business agent by Local 32B until August 17, 1983, when he was discharged following a confrontation with Bevona. On February 21, 1985 this suit was instituted against Bevona and Sweeney under the following caption:

WILLIAM H. BURKE,

*Plaintiff*

—against—

GUS BEVONA, Individually, as President of Local 32B–32J Service Employees International Union, AFL–CIO, as Vice President of the Service Employees International Union, AFL–CIO, and as Trustee of the Local 307 Pension Trust Fund; and JOHN J. SWEENEY, individually, as President of the Service Employees In-

ternational Union, AFL–CIO, and as Trustee of the Service Employees International Union AFL–CIO, Affiliates Officers and Employees Pension Plan,

*Defendants.*

In his "First Claim", Burke accused Bevona and Sweeney of fraudulent misrepresentations. His "Second Claim" was for breach of an alleged employment contract. His "Third Claim" and "Fourth Claim" alleged breach of fiduciary and statutory duties arising out of a delay in remitting the proceeds of two annuity insurance policies. The "Fifth Claim" alleged that defendants' conduct constituted a prima facie tort; this Claim is not pressed on appeal.

On November 4, 1985 Judge Platt granted partial summary judgment dismissing all of Burke's Claims except the First. Although Judge Platt's order did not so state, it is undisputed that he dismissed the Second Claim because he believed that the alleged contract of employment did not satisfy the requirements of New York's statute of frauds.[1] Shortly thereafter, a divided panel of this Court handed down its decision in *Ohanian v. Avis Rent A Car System, Inc.*, 779 F.2d 101 (2d Cir.1985), which dealt specifically with the New York statute. Despite Judge Platt's expressed disagreement with *Ohanian*, a feeling shared by Judge Restani, Judge Platt held that *Ohanian* required reinstatement of the Second Claim. The case then went to trial before Judge Restani.

Judge Restani dismissed the breach of contract claim against Sweeney and Service Employees International during the trial. Thereafter, because of inadvertent error on the part of both court and counsel, the case was submitted to the jury as if Bevona and Sweeney were being sued personally and not as officers of their respective unions. The jury found both defendants liable on the fraud claim and Bevona alone liable on the breach of contract claim. Burke was awarded $684,005 in compensatory damages and $1 million in punitive damages. Judge Restani upheld the finding of con-

---

**1.** The New York statute of frauds provides that an oral contract which "[b]y its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime" is void. N.Y. Gen. Obligl. Law § 5–701(a)(1).

tract liability but granted judgment N.O.V. on the fraud claim, because, she said, Burke had failed to prove fraudulent intent. She also held that the proof did not warrant an award of punitive damages and that a new trial should be had against Bevona alone, limited to the issue of breach-of-contract damages. Judge Restani subsequently ordered that the award in the second trial would be against Bevona, as President of Local 32B. The second trial resulted in a jury award of $386,000 plus interest, and a judgment in the amount of $420,904.54.

For the reasons hereafter assigned, we affirm those portions of Judge Platt's order and revised order which denied defendants' motion to dismiss the First and Second Claims. We reverse that portion which granted defendants' motion to dismiss the Third and Fourth Claims. We affirm that portion of Judge Restani's order which vacated the first jury award for fraud and punitive damages and dismissed that part of plaintiff's action. We also affirm that portion of the order which vacated the breach-of-contract damage award on the first trial but vacate that part which ordered a retrial on the issue of damages alone. We vacate the jury's award in the second trial and remand to the district court for further proceedings relative to plaintiff's Second, Third and Fourth Claims consistent with this opinion.

## THE CONTRACT CLAIM

In *Ohanian v. Avis Rent A Car System, Inc., supra,* 779 F.2d 101, the panel majority stated in dictum that the statute of frauds is an "anachronism today" and that the "reasons that prompted its passage no longer exist." *Id.* at 106.[2] We do not believe this dictum correctly states the thinking of the Legislature of the State of New York. New York's comprehensive statute of frauds is section 5–701 of New York's General Obligations Law. This statute, which basically is a combination of several prior scattered statutes, was enacted in 1963 upon the recommendation of the New York Law Revision Commission, an organization whose legal acumen in the field of statutory reform is well recognized. The New York courts do not treat section 5–701 as an anachronism.[3] Moreover, al-

---

**2.** "Anachronism" is defined as something that is chronologically out of place; that belongs to a former age and is incongruous if found in the present. *See Webster's Third New International Dictionary* 76 (1971).

**3.** *See Meyers v. Waverly Fabrics, Division of F. Schumacher & Co.,* 65 N.Y.2d 75, 78–79, 489 N.Y.S.2d 891, 479 N.E.2d 236 (1985); *Shirley Polykoff Advertising, Inc. v. Houbigant, Inc.,* 43 N.Y.2d 921, 922, 403 N.Y.S.2d 732, 374 N.E.2d 625 (1978) (mem.); *Scheck v. Francis,* 26 N.Y.2d 466, 311 N.Y.S.2d 841, 260 N.E.2d 493 (1970); *Martin Enterprises, Inc. v. Janover,* 140 A.D.2d 587, 528 N.Y.S.2d 855, 857 (1988); *Armored Motor Service v. First Federal Sav. and Loan Ass'n,* 138 A.D.2d 954, 526 N.Y.S.2d 287 (1988); *Halpern v. Shafran,* 131 A.D.2d 434, 435–36, 516 N.Y.S.2d 83 (1987); *Dickenson v. Dickenson Agency, Inc.,* 127 A.D.2d 983, 984–85, 512 N.Y.S. 2d 380 (1987) (mem.); *Asciutto v. Barco Auto Leasing Corp.,* 125 A.D.2d 431, 432, 509 N.Y.S.2d 363 (1986); *Grant v. DCA Food Industries, Inc.,* 124 A.D.2d 909, 910, 508 N.Y.S.2d 327 (1986); *Korff v. Pica Graphics, Inc.,* 121 A.D.2d 511, 504 N.Y.S.2d 17 (1986); *Matter of Kittay,* 118 A.D.2d 647, 648, 500 N.Y.S.2d 6 (1986); *Laub v. Bolar Pharmaceutical, Inc.,* 117 A.D.2d 586, 498 N.Y.S. 2d 56 (1986); *Saunder v. Baryshnikov,* 110 A.D. 2d 511, 512, 487 N.Y.S.2d 51 (1985); *Cunnison v. Richardson Greenshields Securities, Inc.,* 107 A.D.2d 50, 52, 485 N.Y.S.2d 272 (1985); *Sonders v. Roosevelt,* 102 A.D.2d 701, 476 N.Y.S.2d 331 (1984) (mem.); *Montgomery v. Futuristic Foods, Inc.,* 66 A.D.2d 64, 65–66, 411 N.Y.S.2d 371 (1978); *Pollard v. Meyer,* 61 A.D.2d 766, 767, 402 N.Y.S.2d 15 (1977) (mem.); *Chase v. United Hospital,* 60 A.D.2d 558, 559, 400 N.Y.S.2d 343 (1977); *Sladden v. Rounick,* 59 A.D.2d 882, 399 N.Y.S.2d 670 (1977); *Litz Enterprises, Inc. v. Standard Steel Industries, Inc.,* 54 A.D.2d 1107, 388 N.Y.S.2d 735 (1976); *Kobre v. Instrument Systems Corp.,* 54 A.D.2d 625, 387 N.Y.S.2d 617 (1976), *aff'd,* 43 N.Y.2d 862, 403 N.Y.S.2d 220, 374 N.E.2d 131 (1978); *Isaacs v. Incentive Systems, Inc.,* 52 A.D.2d 550, 382 N.Y.S.2d 69 (1976); *Sawyer v. Sickinger,* 47 A.D.2d 291, 294–95, 366 N.Y.S.2d 435 (1975); *Health Delivery Systems, Inc. v. Scheinman,* 42 A.D.2d 566, 567, 344 N.Y.S.2d 190 (1973); *Feinerman v. Russ Togs, Inc.,* 37 A.D.2d 805, 324 N.Y.S.2d 855 (1971); *Babtkis Associates, Inc. v. Tarazi Realty Corp.,* 34 A.D.2d 754, 310 N.Y.S.2d 343 (1970) (mem.); *Sales Ammunition, Inc. v. Standard Paper Mfg. Co.,* 34 A.D.2d 516, 308 N.Y.S.2d 635 (1970) (mem.); *Hausen v. Academy Printing & Specialty Co.,* 34 A.D.2d 792, 793, 311 N.Y.S.2d 613 (1970) (mem.); *Beldengreen v. Ashinsky,* 139 Misc.2d 766, 768–69, 528 N.Y.S.2d 744 (1987); *Roos v. Aloi,* 127 Misc.2d 864, 870–71, 487 N.Y. S.2d 637 (1985).

though the *Ohanian* panel majority was not the first to describe the statute of frauds as an anachronism, that reaction to the statute is not universal. *See, e.g.,* former Professor Llewellyn's article entitled *What Price Contract?—An Essay in Perspective,* 40 Yale L.J. 704 (1931), in which, referring to the statute of frauds, he said:

> That statute is an amazing product. In it de Leon might have found his secret of perpetual youth. After two centuries and a half the statute stands, in essence better adapted to our needs than when it first was passed.

*Id.* at 747.

The instant case is an excellent illustration of the need for a statute of frauds. The scenario, as created by Burke's attorney, pitted an allegedly weak but honest plaintiff against an allegedly powerful and unscrupulous union. So intent was the attorney in following this script that he told the jury in summation:

> Back in 1982, things weren't great for Unions in general. You take a look at who the Labor Union leaders are so often in this Country, and perhaps you know why.

Since we are reversing on other grounds, we need not decide whether the trial judge's instructions which followed defense attorney's objection cured what otherwise might have been reversible error. We mention the incident only to illustrate the tenor of plaintiff's arguments and proof.

The principal complaints concerning the statute of frauds are directed not so much to its existence, as to the inconsistencies in its interpretation. For example, as a general proposition, a contract expressly made terminable upon the death of one of the parties may not fall within the strictures of section 5–701(a)(1) of the General Obligations Law, since the death conceivably might occur within one year. *See Kent v. Kent,* 62 N.Y. 560, 564 (1875); *Suslak v. I. Rokeach & Sons, Inc.,* 269 A.D. 779, 780, 55 N.Y.S.2d 78 (1945), *aff'd,* 295 N.Y. 799,

66 N.E.2d 581 (1946); *Harvey v. J.P. Morgan & Co.,* 166 Misc. 455, 462, 2 N.Y.S.2d 520 (1937). However, New York courts do not look kindly upon oral contracts for lifetime employment. "The kind of servitude envisaged by such lifetime employment ... is not alone abhorrent to law and a claim thereon wholly barred, but it enjoys in addition universal condemnation upon every standard of behavior." *Supplee v. Hallanan,* 14 Misc.2d 658, 659, 179 N.Y.S.2d 725 (1958), *aff'd mem.,* 8 A.D.2d 708, 185 N.Y.S.2d 747 (1959); *see Savodnik v. Korvettes, Inc.,* 488 F.Supp. 822, 824 (E.D.N.Y.1980).

In the instant case, no one questioned Bevona's right to hire and fire. However, there is a substantial question, whether Bevona had the right to make a binding oral contract for lifetime employment.[4] In *Heaman v. E.N. Rowell Co.,* 261 N.Y. 229, 231, 185 N.E. 83 (1933), Chief Judge Pound, writing for the New York Court of Appeals, said:

> Alleged contracts of life employment are, however, so unusual as to have been, with rare exceptions, condemned by the courts as unreasonable and unauthorized. The president or other executive officer of a corporation has no authority as such to make a contract that one should remain in the corporate employ for life even under a general power "to appoint, remove and fix the compensation of employees."

The New York rule thus stated was adopted so that the hands of future corporate officers would not be tied or their actions unreasonably hampered by such an employment commitment. *Carney v. New York Life Ins. Co.,* 162 N.Y. 453, 455, 57 N.E. 78 (1900); *General Paint Corp. v. Kramer,* 57 F.2d 698, 703 (10th Cir.), *cert. denied,* 287 U.S. 605, 53 S.Ct. 10, 77 L.Ed. 526 (1932); *Brown v. Safeway Stores, Inc.,* 190 F.Supp. 295, 300–01 (E.D.N.Y.1960).

The rule thus held applicable to business corporations has even greater significance when applied to labor organiza-

---

**4.** Because the judgment in the first trial was entered against Bevona personally rather than as President of Local 32B, defense attorneys moved to have the judgment corrected. We do not consider the posttrial arguments and concessions, made for that purpose, sufficient to establish Bevona's authority to enter into a binding oral contract for lifetime employment.

tions. A labor union is by law a democratic organization. The members are guaranteed the right "to participate fully in the operation of their union through processes of democratic self-government, and, through the election process, to keep the union leadership responsive to the membership." *Local 3489, United Steelworkers of America v. Usery,* 429 U.S. 305, 309, 97 S.Ct. 611, 614, 50 L.Ed.2d 502 (1977) (quoting *Wirtz v. Hotel, Motel & Club Employees Union,* 391 U.S. 492, 497, 88 S.Ct. 1743, 1747, 20 L.Ed.2d 763 (1968)). *See Madden v. Atkins,* 4 N.Y.2d 283, 293, 174 N.Y.S.2d 633, 151 N.E.2d 73 (1958). The "overriding objective [of the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq.*] was to ensure that unions would be democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections." *Finnegan v. Leu,* 456 U.S. 431, 441, 102 S.Ct. 1867, 1873, 72 L.Ed.2d 239 (1982). "[T]he ability of an elected union president to select his own administrators is an integral part of ensuring a union administration's responsiveness to the mandate of the union election." *Id.* As a general rule, therefore, an elected president such as Bevona has no right to compel those who succeed him in office to honor his staff appointments. *See Cehaich v. International Union, United Automobile, Aerospace and Agricultural Implement Workers,* 710 F.2d 234, 239 & n. 9 (6th Cir.1983).

Unfortunately, this point was neither briefed nor argued below. However, defense counsel did touch on it in his summation:

Mr. Bevona is an elected official. He serves at the behest of his members. He serves for a three-year term. Every three years he must be re-elected. If he's not re-elected, he has nothing—he is out of a job.

Is it conceivable for somebody who only has a three-year commitment, to go out and commit to somebody else a job for longer than his own commitment?

■ The trial court's response to plaintiff's immediate objection was to instruct the jury that "if in fact Mr. Bevona binds

the Union, then the promise could outlast his tenure." At best, this statement begged the question presented; at worst, it misstated the law. In either event, since the issue thus raised involved federal statutory law governing democratic union procedures, and bore not only on Bevona's authority to enter into an oral lifetime contract of employment, but also on the likelihood that he did so, defendant was entitled to an adequate and proper instruction.

In so holding, we do not presume to predetermine whether on retrial plaintiff's proof concerning Bevona's authority to make a binding contract for lifetime employment will be sufficient to make a question of fact for the jury. We hold as a basic proposition, however, that Bevona's authority to make such an unusual contract cannot be presumed. *See Schwartz v. United Merchants & Manufacturers, Inc.,* 72 F.2d 256, 258–59 (2d Cir.1934).

Although the discussion in the preceding paragraphs addressed plaintiff's claim of lifetime employment, it applies equally to plaintiff's possible alternative assertion that he was promised employment for as long as he wanted or until he retired. Under either alternative, there was a strong likelihood that the proposed term of employment would interfere improperly with the democratic processes by which future elected officials and their appointed staffs were put into office.

We note, as did the dissent in *Ohanian,* that there also is substantial New York authority for the proposition that an oral contract for an otherwise unlimited term cannot be brought within the one-year permissible period of section 5–701(a)(1) by a termination contingency that is exercisable only by the plaintiff. *See, e.g., Huebener v. Kenyon & Eckhardt, Inc.,* App.Div., 534 N.Y.S.2d 952 (1988); *Belfert v. Peoples Planning Corp.,* 22 Misc.2d 753, 199 N.Y.S.2d 839 (1959), *aff'd,* 11 A.D.2d 760, 202 N.Y.S.2d 101 (1960), *aff'd,* 11 N.Y.2d 755, 226 N.Y.S.2d 693, 181 N.E.2d 630 (1962); *Supplee v. Hallanan, supra,* 14 Misc.2d 658, 179 N.Y.S.2d 725; *Harris v. Home Indemnity Co.,* 6 A.D.2d 861, 175 N.Y.S.2d 603 (1958). *See also North Shore Bottling*

*Co. v. C. Schmidt and Sons, Inc.,* 22 N.Y. 2d 171, 177 n. 3, 292 N.Y.S.2d 86, 239 N.E.2d 189 (1968); *Radio Corp. of America v. Cable Radio Tube Corp.,* 66 F.2d 778, 784–85 (2d Cir.), *cert. denied,* 290 U.S. 703, 54 S.Ct. 373, 78 L.Ed. 604 (1934); *Special Event Entertainment v. Rockefeller Center, Inc.,* 458 F.Supp. 72, 76 (S.D.N. Y.1978); Putman, *Contracts,* 34 N.Y.U.L. Rev. 1435, 1435–36 (1959).

■ There are a number of other reasons why a trial de novo is required in the contract cause of action. At the outset, we hold that the majority opinion in *Ohanian* should not be read as broadly as the judges below apparently believed was necessary. Section 5–701(a)(1) provides in part that an oral contract which "by its terms" is not to be performed within one year is void. The New York cases uniformly hold that implied termination terms are not sufficient to take an oral contract out of the statute. The terms must be express. As we read *Ohanian,* it purports to adhere to this established New York rule. Phrases such as "according to the parties' terms", "by its very terms", "an oral contract that provides for its own termination", "by its terms", and "under the terms of the contract" may be found throughout the *Ohanian* opinion. What appears to have bothered Judge Platt and Judge Restani, and Judge Wyatt, the dissenting judge in *Ohanian,* as well, was the *Ohanian* panel's broad interpretation of the "terms" of the *Ohanian* contract.

> From what words in the oral contract these provisions can be found we are never told; in a careful reading of the testimony, none have been found.

779 F.2d at 118 (Wyatt, J., dissenting). Indeed, Judge Restani in her opinion denying judgment N.O.V. on the contract claim, said:

> Following the reasoning of the Court of Appeals in *Ohanian,* it is possible that declines in the membership of Local 32B–J could have necessitated the termination of the business agents, such as Mr. Burke.

This clearly would not follow from established New York law. *Zupan v. Blum-*

*berg,* 2 N.Y.2d 547, 550, 161 N.Y.S.2d 428, 141 N.E.2d 819 (1957): *Cohen v. Bartgis Bros. Co.,* 264 A.D. 260, 261–62, 35 N.Y. S.2d 206 (1942), *aff'd,* 289 N.Y. 846, 47 N.E.2d 443 (1943); *see Wright v. Cayan,* 817 F.2d 999, 1002–05 (2d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 157, 98 L.Ed.2d 112 (1987). We do not believe that the *Ohanian* majority intended to hold otherwise. This Court's statement in *Nifty Foods Corp. v. The Great Atlantic and Pacific Tea Co.,* 614 F.2d 832, 837 (2d Cir.1980), that "[a] termination provision must be express … in order to excuse a contract from the writing requirement of the Statute of Frauds", continues to state the law of New York as interpreted by this Court. To the extent that the *Ohanian* panel may have interpreted the "terms" of the *Ohanian* contract more broadly than other judges would have done, the interpretation was peculiar to the facts of that case.

Two provisions of Service Employees International's constitution were introduced into evidence. One of them was relied on by the defendants and the other by the plaintiff. The district court misapplied both of them.

■ Article XXII, Section A of Service Employees International's constitution provides in substance that no member shall bring an action against the International or one of its Locals with respect to any matter arising out of their affairs unless he has exhausted all procedures available under the union's constitution and bylaws. Defendants alleged as an affirmative defense that plaintiff had failed to exhaust these internal procedures before bringing suit. However, the district court held this clause inapplicable to Burke, a union member, simply because he had been fired. This categorical rejection of the Article was improper. *See Kinney v. International Brotherhood of Electrical Workers,* 669 F.2d 1222, 1226 (9th Cir.1982). There may have been good reasons why Burke did not exhaust his intraunion remedies before bringing suit, but the reason given was not one of them. On retrial, the district court should explore this matter further.

■ The provision relied on by the plaintiff, Article XV, states that no member "shall injure the interests of another member by undermining such member in connection with wages or financial status or by any other act, direct or indirect, which would wrongfully jeopardize a member's office or standing." Burke argues that this provision is a term of his employment contract and is a limitation on Local 32B's authority to terminate his employment. However, since this claim was insufficient either to define or limit Local 32B's right to discharge, the district court erred in permitting the jury to consider it for that purpose. *See O'Connor v. Eastman Kodak Co.*, 65 N.Y.2d 724, 492 N.Y.S.2d 9, 481 N.E.2d 549 (1985); *King v. Cornell University*, 81 A.D.2d 712, 439 N.Y.S.2d 445 (1981) (mem.); *Edwards v. Citibank, N.A.*, 74 A.D.2d 553, 425 N.Y.S.2d 327 (mem.), *appeal dismissed*, 51 N.Y.2d 875, 433 N.Y.S.2d 1020, 414 N.E.2d 400 (1980); *Chin v. American Tel. & Tel. Co.*, 96 Misc.2d 1070, 1072–73, 410 N.Y.S.2d 737 (1978), *aff'd*, 70 A.D.2d 791, 416 N.Y.S.2d 160, *motion for leave to appeal denied*, 48 N.Y.2d 603, 421 N.Y.S.2d 1028, 396 N.E.2d 207 (1979).

As is often the situation when plaintiffs attempt to end run the statute of frauds, the briefs of the parties abound with arguments why the numerous rulings which the trial court was required to make should be either approved or disapproved. We see no need to proceed into this thicket any further than we already have. We are satisfied for the reasons already stated that there must be a new trial on the issue of contract liability.

### THE FRAUD CLAIM

■ After carefully reviewing the lengthy original record, we are in complete accord with Judge Restani that plaintiff failed to prove the existence of any fraudulent intent on the part of either Bevona or Sweeney. Plaintiff was hired by Local 32B just as he allegedly had been promised, and was not discharged until a year and a half later, when he fell out of grace with Bevona. This was not enough to warrant a finding of prehiring misrepresentation.

*DiRose v. PK Management Corp.*, 691 F.2d 628, 632–33 (2d Cir.1982), *cert. denied*, 461 U.S. 915, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983). Moreover, in order to prevail on a claim of fraud, plaintiff's reliance on the fraudulent representation must have been justifiable. *Lanzi v. Brooks*, 54 A.D.2d 1057, 1058–59, 388 N.Y.S.2d 946 (1976), *aff'd*, 43 N.Y.2d 778, 402 N.Y.S.2d 384, 373 N.E.2d 278 (1977). Plaintiff was an experienced union official whose existing tenure as an officer of Local 307 was subject to termination through statutorily required, periodic democratic procedures. He also knew that Service Employees International's constitution gave each elected president of Local 32B the right to hire and fire, thus assuring the president of a helpful and loyal staff. Political patronage exists in unions as in any other democracy. *See Adams–Lundy v. Association of Professional Flight Attendants*, 731 F.2d 1154, 1158 (5th Cir.1984). Plaintiff concedes that Bevona told him that no officer of Local 32B had a written employment contract. In short, plaintiff could not reasonably have believed that Bevona could orally guarantee him a lifetime term as an officer of Local 32B. Burke's claim of fraud on the part of Sweeney is equally without merit. Assuming for the argument only that Bevona had some fraudulent intent when he hired Burke, there is no evidence whatever that Sweeney was privy to it. Judge Restani did not err in dismissing the fraud claims for lack of proof.

### THE INSURANCE CLAIMS

At the time Judge Platt dismissed Burke's claim that the defendants had improperly withheld payment of his annuity insurance policies, the facts were not sufficiently developed so that it could be determined whether there had been a violation of ERISA. This uncertainty still exists. That part of Judge Platt's order dismissing plaintiff's Third and Fourth Claims is reversed, and the district court is directed to try these claims together with the Second Claim for breach of contract.

## CONCLUSION

Judge Restani's dismissals of plaintiff's First Claim against both defendants and the Second Claim against Sweeney alone are affirmed. The judgments against Bevona on the Second Claim are vacated, and the issues involved in the Second Claim against Bevona as President, etc. are remanded to the district court for proceedings consistent herewith. Judge Platt's dismissal of the Third and Fourth Claims is reversed, and the issues raised therein are remanded to the district court for further proceedings. Any orders of the district court inconsistent with the foregoing disposition are vacated. No costs to either party.[5]

---

**5.** Defendant–Appellant's request that this Court certify questions to the New York Court of Appeals concerning (1) the fixed or indefinite duration of employment contracts "For As Long As I Live, Until I Retire, Or For As Long As I Want", and (2) the scope of a "Just Cause" limitation on an employer's right to discharge, is denied without costs. *See Retail Software Services, Inc. v. Lashlee,* 71 N.Y.2d 788, 530 N.Y.S.2d 91, 525 N.E.2d 737 (1988) (per curiam).