William H. **BURKE**, Plaintiff,

v.

**Gus BEVONA, as President of Local 32B–32J, Service Employees International Union, AFL–CIO, Defendant.**

**No. 85 CV 548 (ERK).**

United States District Court,
E.D. New York.

July 11, 1990.

Jeffrey Craig Miller, Miller & Korzonik, New York City, for plaintiff.

Peggy L. Kerr, Skadden, Arps, Slate, Meagher & Flam, New York City, for defendant.

## AMENDED MEMORANDUM AND ORDER

KORMAN, District Judge.

The issue presented by defendant's motion for summary judgment is whether plaintiff's action for breach of his employment contract is barred either because Gus Bevona, as President of Local 32B–32J, lacked the authority to make such a contract or because it does not satisfy the Statute of Frauds. The facts underlying this case are set out in the opinion of the Court of Appeals in *Burke v. Bevona,* 866 F.2d 532, 534–35 (2nd Cir.1989). There, the Court of Appeals vacated the jury's finding that defendant had breached plaintiff's employment contract and held that the jury had been improperly and inadequately instructed on the substantive law when it was told that "if in fact Mr. Bevona binds the Union, then the promise could outlast his tenure." *Id.* at 537.[1] Although the issue of Bevona's authority to make a lifetime employment contract with plaintiff was "neither briefed nor argued below," the Court of Appeals held that it was preserved on appeal because it "involved federal statutory law governing democratic union procedures," and because the defense counsel "touch[ed] on it in his summation." *Id.* (citing the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq.* (1985); *Finnegan v. Leu,* 456 U.S. 431, 441, 102 S.Ct. 1867, 1873, 72 L.Ed.2d 239 (1982)).

The Court of Appeals also rejected the trial judge's finding that, because "declines in the membership of Local 32B–J could have necessitated [plaintiff's] termination," plaintiff's contract was excused from the writing requirement of the Statute of Frauds. *Id.* at 538. It held that, under New York law, only an express termination clause can take a contract out of the statute and that this was not such a clause. The Court of Appeals then remanded the breach of contract claim for further proceedings, including a trial de novo, *id.,* but with the proviso that it "[would] not presume to predetermine whether on retrial plaintiff's proof concerning Bevona's authority to make a binding contract for lifetime employment will be sufficient to make a question of fact for the jury." *Id.* at 537.

The Court of Appeals went on to affirm the dismissal of plaintiff's fraud claim against Bevona because plaintiff failed to prove "fraudulent intent." It found that plaintiff could not sustain his claim for "prehiring misrepresentation" because he had been hired as promised and had not been discharged "until a year and a half later, when he fell out of grace with Bevona." *Id.* at 539 (citing *DiRose v. PK Management Corp.,* 691 F.2d 628, 632–33 (2nd Cir.1982), *cert. denied,* 461 U.S. 915, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983)). It also found that plaintiff, as an experienced union member and official, could not prove that he "reasonably could have believed that Bevona could guarantee him a lifetime term as an officer of Local 32B" as to prevail on his fraud claim. *Id.* (citing *Lanzi v. Brooks,* 54 A.D.2d 1057, 1058–59 (3rd Dep't 1976), *aff'd,* 43 N.Y.2d 778, 402 N.Y.S.2d 384, 373 N.E.2d 278 (1977)).

After remand, defendant moved for summary judgment on the grounds that Bevona did not have the authority to make a lifetime employment contract with plaintiff and that the contract is barred by the Statute of Frauds. Defendant argues that the authority to make a contract as extraordinary as one for lifetime employment can

1. The named defendant on the breach of contract cause of action should be Local 32B–32J rather than Gus Bevona. *See* Fed.R.Civ.P. 17(b). Indeed, the Court of Appeals noted that "[b]ecause the judgment in the first trial was entered against Bevona personally rather than as President of Local 32B, defense attorneys moved to have the judgment corrected." *Id.* at 536, n. 4.

not be implied from a president's general powers to appoint necessary personnel. Because Bevona was not expressly authorized to employ plaintiff indefinitely, defendant argues that the contract is unenforceable. Defendant also argues that plaintiff's oral employment contract does not satisfy the Statute of Frauds because, "[b]y its express terms, [it] is not to be performed within one year from the making thereof...." N.Y.Gen.Oblig.Law § 5–701(a)(1) (McKinney 1989).

### A. The Lack of Authority Defense

█ In order for plaintiff to have an enforceable contract for lifetime employment with the union, the Court of Appeals held that he must establish that Bevona had the authority to make such a contract. Burke v. Bevona, 866 F.2d at 536. Whether such authority existed is determined both by public policy and principles of agency law. The Court of Appeals cited with approval the "New York rule" that a contract for lifetime employment is presumed to be unreasonable and unauthorized and will not be enforced unless it is proven that the person making it on behalf of the company was expressly authorized to do so. Id. (citing Heaman v. E.N. Rowell Co., Inc., 261 N.Y. 229, 231, 185 N.E. 83 (1933)). In Heaman, the New York Court of Appeals observed that:

> Alleged contracts of life employment are, however, so unusual as to have been, with rare exceptions, condemned by the courts as unreasonable and unauthorized. The president or other executive officer of a corporation has no authority as such to make a contract that one should remain in the corporate employ for life even under a general power "to appoint, remove and fix the compensation of employees." That any board of

directors or other persons responsible for the management of a corporation should give such unusual power to an executive officer cannot be implied. Plain language of the managing board, clearly showing that such was the intention of the corporation, coupled with power actually or impliedly vested in the corporation itself, must be found to justify such a hiring.

Id. at 231–32, 185 N.E. 83 (citations omitted). The purpose of this rule is to prevent the current officers of a company from imposing unreasonable contracts upon future officers or by otherwise hampering their ability to hire personnel who would be responsive to the needs of the company. Carney v. N.Y. Life Ins. Co., 162 N.Y. 453, 455, 57 N.E. 78 (1900).

This rule was held to "have even greater significance when applied to labor organizations" by virtue of their "democratic" nature. Burke v. Bevona, 866 F.2d at 536–37 (citing Local 3489, United Steelworkers of America v. Usery, 429 U.S. 305, 309, 97 S.Ct. 611, 614, 50 L.Ed.2d 502 (1977); Madden v. Atkins, 4 N.Y.2d 283, 293, 174 N.Y. S.2d 633, 151 N.E.2d 73 (1958)). This is due to the existence of federal laws, which require " 'open, periodic elections' " and whose " 'overriding objective' " is to " 'ensure a union administration's responsiveness to the mandate of union election.' " Id. at 537 (quoting Finnegan v. Leu, 456 U.S. 431, 441, 102 S.Ct. 1867, 1873, 72 L.Ed.2d 239 (1982)). Based on this authority, the Court of Appeals concluded that "[a]s a general rule, therefore, an elected president such as Bevona has no right to compel those who succeed him in office to honor his staff appointments." [2] Id. (citing Cehaich v. International Union, United Automobile, Aerospace and Agricultural

---

**2.** This language suggests that, even if Bevona had been authorized to make a lifetime employment agreement, it would have been unenforceable as a matter of law. Cf. Demov, Morris, Levin & Shein v. Glantz, 53 N.Y.2d 553, 444 N.Y.S.2d 55, 428 N.E.2d 387 (1981) (client has absolute right on public policy grounds to terminate attorney-client relationship at any time without cause). Moreover, the emphasis on "federal statutory law," in excusing defendant's

failure to raise Bevona's lack of authority as an affirmative defense and in discussing the merits of the defense, suggests that the issue may be governed by federal rather than New York law. See e.g. Local 472 of the United Assoc. of Journeymen and Apprentices v. Georgia Power Co., 684 F.2d 721, 725–26 (11th Cir.1982); Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkes-Barre Local 120, 647 F.2d 372, 379–81 (3rd Cir.1981).

*Implement Workers*, 710 F.2d 234, 239 & n. 9 (6th Cir.1983)).

Plaintiff cannot sustain his claim against defendant for breach of his lifetime employment contract because he cannot prove, as he is required to by law, that either the Executive Board or the membership of Local 32B–32J expressly authorized the making of such a contract. *See* Annotation, *Power of Corporate Officer or Agent to Hire Employees For Life*, 28 A.L.R.2d 929, 933 (1953) ("In the absence of express authority, it has generally been held or recognized that corporate officers or agents do not have the power or authority to hire employees for life."); *see also Heaman v. E.N. Rowell Co., Inc.*, 261 N.Y. at 232, 185 N.E. 83. The defendant has established, through unrebutted evidence, that the Executive Board never authorized Bevona to enter into a longterm or lifetime employment contract with any employee.[3] *See* Affidavit of Donald F. Mumm, September 14, 1989; Affidavit of Kevin McCulloch, September 13, 1989; Affidavit of John Sweeney, September 14, 1989; Affidavit of Gus Bevona, September 13, 1989; Affidavit of Joseph Baumann, September 13, 1989.

Plaintiff argues that, even if Bevona was not expressly authorized to make this contract, the union should nevertheless be bound because "Bevona [neither needed nor sought] the approval of the Executive Board for anything he did in the realm of employment practice" and that "throughout the first trial, defendant's counsel alleged over and over the President's unilateral power and discretion in the matter of hiring and firing." Affidavit of William Burke, February 9, 1990, at Paragraphs 44, 46. He argues that a reasonable person would have believed that Bevona had the implied authority to make a lifetime employment contract because it was commensurate with his general power to appoint necessary personnel and because "[he] was authorized to do what was reasonable and

necessary to accomplish the merger of Local 307 into Local 32B–J." Affidavit of William Burke, April 20, 1990, at Paragraph 5. Moreover, plaintiff argues that defendant should be estopped from denying Bevona's lack of authority to employ plaintiff for life because defendant has reaped the fruits of plaintiff's promise to support the merger.

■ Under prevailing law, an unauthorized contract for lifetime employment may be enforced where: 1) the plaintiff has given valuable consideration in exchange for the defendant's promise; 2) it will not unreasonably infringe upon the decisions of future corporate officers; and 3) it is necessary to prevent injustice. *See generally* Annotation, *Power of Corporate Officer or Agent to Hire Employees For Life*, 28 A.L.R.2d 929, 935–38 (1953). In *Usher v. N.Y. Cent. & H. R.R. Co.*, 76 A.D. 422, 78 N.Y.S. 508 (2nd Dep't 1902), *aff'd*, 179 N.Y. 544, 71 N.E. 1141 (1904), the Appellate Division illustrated the circumstances in which a defendant will be found to have had apparent authority, or will be estopped from denying that he had authority, to make a valid lifetime employment contract:

> [T]he case presented is not one of a simple and naked contract of employment, but is the case of the immediate and final settlement and adjustment of a claim for compensation for serious injuries alleged to have been occasioned by the defendant's negligence.... In such a case, where an employee has been rendered nearly helpless by the company's fault, and without any fault of his own, it could hardly be said to be unreasonable, in consideration of release of his claim for damages, for the company to agree to put him to such work as he was still competent to perform in his crippled condition, to pay him for it one-half of what he was previously able to earn and to keep him at it for life; that is, during good behavior, obedience, and competen-

---

**3.** Plaintiff argues that, because the president of Local 32B–32J is elected by the union's members, the public policy that requires a corporate board of directors to expressly authorize a corporate president to make extraordinary contracts is not applicable here. This argument is without merit. If Bevona's powers derived from the membership rather than from the Executive Board, then the membership had to expressly authorize him to enter into lifetime employment contracts. Plaintiff does not allege that the membership ever did so.

cy. It is within general knowledge that such contracts under such circumstances are by no means unusual, and, to whatever other objection they may be obnoxious, they would seem to be free from the taint of unreason, as infringing upon the powers of succeeding corporate officers.

*Id.* at 424, 78 N.Y.S. 508; *accord F.S. Royster Guano Co. v. Hall*, 68 F.2d 533, 536 (4th Cir.1934) (The rule, "that a general manager of a business with authority to employ servants does not ordinarily have the authority to enter into contracts for lifetime employment" is subject to exception "where, as an incident to a settlement for personal injuries, it is agreed to employ the injured one in some capacity not involving managerial responsibility."); *Standard Oil Co. v. Nickerson*, 103 Fla. 701, 138 So. 55 (1931) (An agent vested with the authority to settle claims for damages and to hire and discharge employees may be presumed to possess those powers which are commensurate with this undertaking, including the authority to employ an injured employee for life in consideration for the release of his claim against the corporation.). As the Court of Appeals for the Fourth Circuit held, "[t]he wisdom of this exception to the general rule is manifest:"

> Such contracts providing employment to laborers who have been injured in the service of the employer do not interfere in any substantial way with the employer's control over his business. They are reasonable, in that they enable the employer to obtain release from claims for damages which may prove expensive to him.... [I]t would be a harsh rule which would deny validity to [such contracts] and thus enable employers, in disregard of their provisions, to discharge with impunity employees who had surrendered claims for damages in reliance upon them. To say that, where the employer does this, the employee is relegated to his original claim for damages, does *not* meet the hardship suggested. The employee is still confronted with the release which he has signed; and it may well happen that with the passage of time he may have lost the means of

proving his case for damages or may find it barred by the statute of limitations.

*F.S. Royster Guano Co. v. Hall*, 68 F.2d at 536.

██ In the instant case, there are no similarly compelling reasons why plaintiff's contract should be exempted from the general rule that lifetime employment contracts are unreasonable. First, plaintiff's argument that business agents should be exempted because they occupy "non-managerial" positions is precluded by the law of the case. *Burke v. Bevona*, 866 F.2d at 539 ("We hold as a basic proposition, however, that Bevona's authority to make such an unusual contract cannot be presumed."). Although discovery could reveal the "reality" that "the composition of the business agent staff scarcely varies over the years," Affidavit of William Burke, February 9, 1990, at Paragraph 41, the issue here turns on the power of the president of a union to tie the hands of a possibly reform-minded successor. Unlike a private employment relationship, plaintiff's relationship with defendant implicates strong considerations of public policy:

> A labor union is by law a democratic organization. The members are guaranteed the right "to participate fully through processes of democratic self-government, and, through the election process, to keep the union leadership responsive to the membership."

. . . . .

Although the discussion in the preceding paragraphs addressed plaintiff's claim of lifetime employment, it applies equally to plaintiff's possible alternative assertion that he was promised employment for as long as he wanted or until he retired. Under either alternative, there was a strong likelihood that the proposed term of employment would interfere improperly with the democratic processes by which future elected officials and their appointed staffs were put into office.

*Burke v. Bevona*, 866 F.2d at 537. Thus, the result that plaintiff argues for would

give legal force to the undemocratic customs and practices that he now disparages.

Second, there is absent here the kind of injustice that would justify estopping defendant from denying Bevona's authority to make a lifetime employment contract. The Court of Appeals held that plaintiff had no basis for believing "that Bevona could orally guarantee him a lifetime term as an officer of Local 32B." *Id.* at 539. This was attributed to plaintiff's experience as a union member and official, his familiarity with the provisions of the union's constitution regarding the power of the president to appoint necessary personnel, and his knowledge that "no officer of Local 32B had a written employment contract." *Id.* As a result, even if plaintiff did rely upon Bevona's authority to make a lifetime employment contract, his unjustified reliance does not require that defendant be estopped from denying Bevona's authority to enter into the contract at issue.

Third, unlike the injured employees in *Usher v. N.Y. Cent. & H. R.R. Co.* and *F.S. Royster Guano Co. v. Hall*, plaintiff did not "surrender a claim for damages" or otherwise give valuable consideration in reliance upon Bevona's promise to employ him. Rather, plaintiff used his considerable power and influence as an officer of Local 307 to obtain a promise of lifetime employment in exchange for his support of the merger. Whether or not this constituted an abuse of his fiduciary position, it hardly provides a basis for straining to fit the facts of this case into the very narrow exception to the rule that lifetime employment contracts are unreasonable unless expressly authorized by the party to be bound.

In a last ditch effort to avoid the application of this rule, plaintiff alleges that his contract was not for lifetime employment, but that he "understood that a commitment was being made that the *ordinary* practice would apply to [him] and that *nothing out of the ordinary* would happen to [him]." Affidavit of William Burke, February 9, 1990, at Paragraph 51. In support of this argument, plaintiff accepts Bevona's trial testimony to supply the terms of his employment contract:

> Specifically with regard to Burke and McCann since they were officers of 307, and those positions were being dissolved, that they would be hired as business agents and treated as any other business agent.

> .    .    .    .    .

> It was a brief meeting. Burke came in to cut a deal for himself. He was still concerned about being what he termed a "victim of the merger." He didn't want to put himself in a position where after the merger he was going to be out of a job and find himself in the street. I assured him, as I did at the previous meeting, that that was not my intention. I was not on a witchhunt. I was not looking to make the merger complete and throw everybody out in the street. That everybody would be hired, as I promised, and I would keep my commitment, and that if everybody did their job, they would work.

*Id.* at Paragraphs 32, 33 (citations to transcript omitted).

Relying on this testimony, plaintiff claims that he does not now allege that defendant was promising him employment for as long as he wanted "without regard to [his] acts or omissions or the good faith needs of the union." *Id.* at Paragraph 52. Rather, he claims that he knew that "there was a well recognized custom and usage in the Locals affiliated with the Service Employees International Union that business agents [were] not fired except for a compelling good faith reason, *i.e.*, broad just cause." Plaintiff's Memorandum of Law in Opposition to Summary Judgment at 24. Because his contract for employment as a business agent was terminable for "a good faith reason," plaintiff argues that his contract was not unusual or extraordinary and that Bevona had authority, albeit implied, to bind the union to it. Affidavit of William Burke, February 9, 1990, at Paragraph 54.

Plaintiff's attempt to characterize his contract as ordinary because it was terminable for just cause adds nothing to his case.

Under the prevailing law, "notwithstanding that a contract for permanent or lifetime employment is binding against the employer ... the employer retains the right to terminate the employee 'for cause.'" Annotation, *Validity and Duration of Contract Purporting to Be for Permanent Employment,* 60 A.L.R.3d 226, 325 (1974); *see Eckhart v. Plastic Film Corp.,* 129 F.Supp. 277, 280 (D.Conn.1955); *Usher v. N.Y. Cent. & H. R.R. Co.,* 76 A.D. at 424, 78 N.Y.S. 508. Such contracts are nevertheless regarded as extraordinary because they provide the employee with a kind of tenured employment of indefinite duration that infringes on the powers of succeeding officers and that, for all practical purposes, subjects the employer to the burden and expense of a breach of contract action on the issue of just cause if it seeks to terminate the relationship. *See Brooklyn Law School v. Aetna Casualty & Surety Co.,* 661 F.Supp. 445, 447–49 (E.D.N.Y.1987), *aff'd,* 849 F.2d 788 (2nd Cir.1988).

Moreover, plaintiff comes dangerously close to talking himself out of a breach of contract action when he argues that his agreement with defendant did not require express authorization because he could have been fired for any good faith reason. The Court of Appeals held that plaintiff was not terminated because Bevona possessed a bad faith, pre-contractual intent to terminate him as soon as the merger was effectuated. *Burke v. Bevona,* 866 F.2d at 539. Instead, he "was not discharged until a year and a half later, when he fell out of grace with Bevona." *Id.* Plaintiff fails to explain why such a falling out is not within the scope of his newly acknowledged "broad just cause" termination provision. There is no need to resolve this issue, however, because Bevona did not have the authority to make the employment contract that plaintiff alleges.

### B. *The Statute of Frauds Defense*

Defendant argues that plaintiff's contract, even if authorized, is barred by the Statute of Frauds because it was for an indefinite term and, by its terms, it was not capable of performance within one year. N.Y.Gen.Oblig.Law § 5–701(a)(1) (McKinney 1989). When it addressed this issue, the Court of Appeals observed that "[t]he New York cases uniformly hold that implied termination terms are not sufficient to take a contract out of the statute. The terms must be express." *Burke v. Bevona,* 866 F.2d at 538.

The Court of Appeals strongly suggested that there were no such "express terms" present here. Specifically, it rejected the trial court's suggestion that the defense of the Statute of Frauds was defeated by the fact that plaintiff's employment contract could have been terminated if the membership of Local 32B–J declined. *Id.* at 538. While this was the sole cited basis upon which the trial court had declined to set aside the verdict in plaintiff's favor, the Court of Appeals, nevertheless, held that on remand "that there must be a new trial on the issue of contract liability." *Id.* at 539. Because the appeal on the defense of the Statute of Frauds was heard on a complete record and because the Court of Appeals had no reason to remand for a new trial unless it was of the view that there was sufficient evidence of an express termination clause to create a triable issue, summary judgment on this defense is foreclosed.[4]

### Conclusion

The motion for summary judgment of the breach of contract claim is granted on the ground that Bevona lacked the authority to make a contract for lifetime employment.[5]

SO ORDERED.

---

**4.** Defendant is free to argue on appeal, as an additional ground for affirmance, that summary judgment should have been granted on the defense of the Statute of Frauds.

**5.** The Court of Appeals also reversed the dismissal of plaintiff's claims that defendant "had im-

---

properly withheld payment of [plaintiff's] annuity insurance policies," on that ground that "the facts were not sufficiently developed so that it could be determined whether there had been of violation of ERISA." *Burke v. Bevona,* 866 F.2d

at 539. The parties have now advised me that they have settled these claims. Accordingly, the third and fourth causes of action are hereby discontinued without prejudice to the right to reopen if the settlement is not consummated.